**ARAPAHOE ROOFING AND SHEET METAL, INC., Petitioner–Appellant,**

v.

**CITY AND COUNTY OF DENVER, Respondent–Appellee.**

**No. 91SA275.**

Supreme Court of Colorado,
En Banc.

May 18, 1992.

As Modified on Denial of Motion for Clarification June 1, 1992.

As Modified on Denial of Rehearing June 8, 1992.

Hurth, Yeager & Sisk, John M. Yeager, Charles L. Sisk, Barbara J. Gifford, Boulder, for petitioner-appellant.

Daniel E. Muse, City Atty., Maria Kayser, Asst. City Atty., Denver, for respondent-appellee.

Justice VOLLACK delivered the Opinion of the Court.

Petitioner, Arapahoe Roofing and Sheet Metal, Inc. (Arapahoe Roofing), appeals from a district court judgment affirming a use tax deficiency issued by the City and County of Denver (the City), in the amount of $76,113.43. We affirm.

## I.

Arapahoe Roofing installs roofing and sheet metal products. While its office is located in Broomfield, Colorado, Arapahoe Roofing purchases and installs such products within the City.

In the fall of 1989, the City requested that Arapahoe Roofing make its records available in order for the City to conduct an audit regarding use tax payments pursuant to section 53–101 of the Revised Municipal Code of the City and County of Denver (DRMC).[1] Arapahoe Roofing refused.[2] On October 13, 1989, the City wrote Arapahoe Roofing a letter, again requesting access to records in order to conduct an audit. On October 24, Arapahoe Roofing responded and asked the City to provide examples of specific incidents wherein Arapahoe Roofing was not properly taxed.

On October 30, the City wrote Arapahoe Roofing a letter requesting cooperation in an audit. The October 30 letter stated that, without Arapahoe Roofing's cooperation, the City would have no choice but to issue an assessment based on an estimate pursuant to section 53–117(1) of the DRMC. Arapahoe Roofing did not produce any records for the City's review.

The October 30 letter also included a Notice of Proposed Deficiency for use taxes owed from January 1, 1982, to September 30, 1989. Failing to receive any response, on December 6, 1989, the City sent Arapahoe Roofing a Final Determination, Assessment and Demand for Payment. The assessment was based on an estimate derived from a list of Arapahoe Roofing projects in the City, organized by year and building permit number. The list included a valuation for materials that Arapahoe Roofing purchased for the projects.[3]

On December 21, Arapahoe Roofing requested an administrative hearing before the Manager of Revenue (the Manager) in order to contest the use tax assessment pursuant to section 53–117(d) of the

1. The City employs a taxation scheme whereby Arapahoe Roofing is required to pay either a sales tax or a use tax for materials it purchased and installed in Denver. *See* § 53–92 of the Revised Municipal Code of the City and County of Denver (DRMC); *Walgreen v. Charnes*, 819 P.2d 1039, 1043 (Colo.1991).

2. At an administrative hearing, the hearing officer found that Arapahoe Roofing's refusal to produce records stemmed from its argument that it would be a monumental task. Arapahoe Roofing contends that it maintains its records by job number or contractor name, not by jurisdiction or municipality. Thus, according to Arapahoe Roofing, a request by the City to inspect files to verify that use taxes were paid would be monumental, whereas a request about specific job sites would have been less burdensome.

3. In computing a retail value for materials, the City calculated sixty percent of the estimated project cost as reflected in the permits that Arapahoe Roofing submitted to the City. At oral argument, the City stated that sixty percent was selected as the appropriate percentage of the cost of materials because roofing is material-intensive and the labor involved is unskilled and thus less cost-intensive.

DRMC.[4]

On March 9, 1990, an administrative hearing was held, wherein Arapahoe Roofing contended that it had paid taxes on the items covered by the assessment.[5] Arapahoe Roofing also contended, among other things, that placing the burden of proving the incorrectness of the City's assessment on Arapahoe Roofing violated its due process rights. The Manager found that Arapahoe Roofing failed to meet its burden of proving the unconstitutionality of the challenged ordinance. The Manager affirmed the City's assessment of use taxes.

Arapahoe Roofing filed a complaint for judicial review on August 7, 1990, pursuant to DRMC section 53–124.[6] In its complaint for relief, Arapahoe Roofing argued that the hearing officer acted in an arbitrary and capricious manner, made a determination that was not supported by the evidence, and consequently abused her discretion. Arapahoe Roofing did not challenge the constitutionality of any City ordinances, nor did it seek *de novo* review of the Manager's decision pursuant to section 29–2–106.1, 12A C.R.S. (1987), and section 39–21–105, 16B C.R.S. (1982).[7]

The district court found competent evidence in the record to support the Manager's findings. Arapahoe Roofing appealed to this court, contending that the DRMC violates its due process rights. Arapahoe Roofing alternatively contends that the Manager abused her discretion in affirming the City's assessment, and that it is entitled to *de novo* review under this court's decision in *Walgreen v. Charnes*, 819 P.2d 1039 (Colo.1991). We separately address each contention.

## II.

Arapahoe Roofing contends that it properly preserved various constitutional challenges to the DRMC for appellate review by this court.[8] We disagree.

Arapahoe Roofing contends that it properly preserved the constitutional issues for appeal to this court since it raised the issues in its administrative hearing before the Manager. Arapahoe Roofing reasons that the administrative hearing was the tribunal of original jurisdiction in this case, and issues first raised in courts of original jurisdiction are properly preserved for appellate review.[9]

---

**4.** Section 53–117(d) of Denver Revised Municipal Code (DRMC) provides:

[I]f any taxpayer, having filed a return and paid over the tax levied by this article, feels that the amount of the tax is incorrect, the taxpayer may apply to the manager by petition in writing within twenty (20) days after the notice is mailed to him or, if applicable, after personal service; and the taxpayer may demand a hearing and a correction of the amount or part of the amount of the tax so paid, setting forth therein the reasons why the amount should be reduced.

**5.** Arapahoe Roofing produced a letter sent to all its vendors, asking the vendors to charge sales taxes on Arapahoe Roofing's purchases. Arapahoe Roofing also produced a set of invoices proving that Arapahoe Roofing paid sales tax for one project performed in Denver.

**6.** Section 53–124 provides:

Should the taxpayer be aggrieved by the final decision of the manager, the taxpayer may proceed to have the same reviewed under Colorado Rule of Civil Procedure 106(a)(4).... Unless otherwise provided by the Colorado Rules of Civil Procedure, and notwithstanding the provisions of section 106.1, article 2, title 29, of the Colorado Re-

vised Statutes, the standard of review by the district court shall be to determine only whether the manager has exceeded the jurisdiction or abused the discretion vested by this article in the office.

**7.** Section 29–2–106.1, 12A C.R.S. (1987), allows taxpayers to perfect appeals from local government's taxation assessments in conformity with the procedures provided in § 39–21–105, 16B C.R.S. (1982). Section 39–21–105(2)(b) allows for *de novo* review in the district court.

**8.** Arapahoe Roofing contends that the DRMC violates its rights to substantive due process by giving the Manager of Revenue unbridled discretion and by placing an impermissible burden of proof on the taxpayer. Arapahoe Roofing also contends that the DRMC violates its rights to procedural due process by affording a presumption of correctness to an assessment and by placing a burden on the taxpayer to overcome that presumption.

**9.** Arapahoe Roofing cites three cases in support of this statement, *Manka v. Martin,* 200 Colo. 260, 614 P.2d 875 (1980); *Matthews v. Tri–County Water Conservancy District,* 200 Colo. 202, 613 P.2d 889 (1980); and *City of Aurora v.*

Arapahoe Roofing additionally contends that it sought review of the Manager's decision in the district court pursuant to C.R.C.P. 106(a)(4), which limits review to whether the Manager exceeded her jurisdiction or abused her discretion. Arapahoe Roofing notes that review under C.R.C.P. 106(a)(4) does not encompass constitutional challenges. Accordingly, Arapahoe Roofing contends that this court is the proper forum for its constitutional challenges.

■ This court and the court of appeals have consistently held that administrative agencies do not have authority to pass on the constitutionality of statutes or ordinances. *Clasby v. Klapper,* 636 P.2d 682, 684 n. 6 (Colo.1981); *Kinterknecht v. Industrial Comm'n,* 175 Colo. 60, 67, 485 P.2d 721, 724 (1971); *see also Denver Center for the Performing Arts v. Briggs,* 696 P.2d 299, 305–06 n. 5 (Colo.1985); *Industrial Comm'n v. Board of County Comm'rs,* 690 P.2d 839, 844 n. 6 (Colo.1984); *Lucchesi v. State,* 807 P.2d 1185, 1191 (Colo.App. 1990); *Matthews v. Industrial Comm'n,* 627 P.2d 1123 (Colo.App.1980); *cf. Johnson v. Robison,* 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974) (following the principle that administrative agencies generally do not have jurisdiction to adjudicate the constitutionality of congressional enactments); 4 K.C. Davis, *Administrative Law Treatise* § 26:6 (1983) (stating that administrative agencies generally lack power to pass on the constitutionality of statutes and that no federal court has adopted the California view that an agency may make such determinations).

■ When a party wishes to challenge the constitutionality of a statute or ordinance under which an administrative agency acts, the proper forum is the district court where the party can seek a declaratory judgment. *Clasby,* 636 P.2d at 684 n. 6; *Kinterknecht,* 175 Colo. at 67, 485 P.2d at 724; *see also Stevenson v. Industrial Comm'n,* 190 Colo. 234, 545 P.2d 712 (1976); *Lucchesi,* 807 P.2d at 1191.

In *Kinterknecht,* a plaintiff appealed an award of damages from the Industrial Commission to the court of appeals. *Kinterknecht,* 175 Colo. at 62, 485 P.2d at 724. This court granted certiorari prior to judgment of the court of appeals because Kinterknecht challenged the constitutionality of the Occupational Disease Act, the act under which the Industrial Commission awarded Kinterknecht damages. This court concluded that in the posture of "a reviewing court, we hold that the constitutional challenge ... is not properly before us." *Id.* at 67, 485 P.2d at 724. This court stated further:

> Where the constitutionality of a statute, under which an administrative agency acts, is challenged, the administrative agency cannot pass upon its constitutionality. *That function may be exercised only by the judicial branch of government....* The proper forum for this is the district court, where a declaratory judgment action can be initiated by [the party].

*Id.* (emphasis added).

■ Colorado courts have consistently followed this court's decision in *Kinterknecht. See Lucchesi,* 807 P.2d at 1191 (holding that administrative agencies have no jurisdiction to pass on constitutional challenges to statutes which it administers and that such issues must be raised before a district court in a declaratory judgment action); *Denver Center for the Performing Arts,* 696 P.2d at 305–06, n. 5 (holding that parties are not required to raise constitutional issues in an administrative forum because a hearing officer's decision on such issues will not be considered authoritative); *see also Clasby,* 636 P.2d at 684 n. 6 (holding that a party was not required to present a constitutional challenge to an administrative agency before raising the issue on appeal to the district court).[10]

*Aurora Firefighters' Protective Association,* 193 Colo. 437, 566 P.2d 1356 (1977). All of the cases cited stand for the proposition that claims not raised at the *trial* level will not be considered by the supreme court for the first time. None of these cases confronts the issue of whether an administrative agency is a forum of original jurisdiction with respect to constitutional challenges.

10. We note that this court has previously recognized that litigants may present constitutional challenges to the Industrial Commission before

■ Arapahoe Roofing presented its constitutional challenges to the Manager of Revenue, but did not raise them before the district court.[11] Arapahoe Roofing should have sought declaratory relief in the district court. We conclude that Arapahoe Roofing did not properly preserve its constitutional challenges for appeal to this court.

### III.

Arapahoe Roofing also contends that the Manager's decision cannot be upheld because it is arbitrary, capricious, and a clear abuse of discretion. We disagree.

■ The DRMC permits the Manager to make an assessment where the taxpayer has failed to make accounts or records available upon demand of the Manager.[12] See, for example, section 53–117(a) of the DRMC, which provides:

> If any person neglects or refuses to make a return in payment of the taxes as required by this article, the manager shall make an estimate, based upon such information as may be available to him,

with or without employing investigative powers vested in the manager by this article, of the amount of the taxes due[.]

Estimates made pursuant to DRMC 53–117 become final assessments twenty days from either the date of personal service of the demand or the date of mailing the demand. DRMC 53–117(c).[13] We will not disturb such assessments upon appeal unless the assessment is unsupported by competent evidence when the record is considered. *See Ross v. Fire and Police Pension Ass'n,* 713 P.2d 1304 (Colo.1986).

Arapahoe Roofing advances several arguments in support of its contention that the City's estimate is unsupported by any competent evidence. Arapahoe Roofing first contends that no evidence substantiates that sixty percent of permit cost is an appropriate percent to use in order to calculate use tax due. Arapahoe Roofing relies on this court's decision in *Rancho Colorado, Inc. v. City of Broomfield,* 196 Colo. 444, 586 P.2d 659 (Colo.1978).

■ In *Rancho Colorado,* this court condemned use taxes imposed on the estimated

---

presenting them to a judicial body. *See Industrial Comm'n v. Board of County Comm'rs,* 690 P.2d 839, 844 n. 6 (Colo.1984) (holding that, while a litigant raised constitutional arguments before an administrative agency, such arguments must be raised for the first time on appeal to the court of appeals). We view as more appropriate an action in district court for declaratory relief regarding constitutional challenges.

11. Arapahoe Roofing contends that this court has jurisdiction over its constitutional issues simply because the constitutionality of a statute is at issue under § 13–4–102(1), 6A C.R.S. (1987). Section 13–4–102(1) states that "the court of appeals shall have jurisdiction over appeals from final judgments of the district courts ... except in ... (b) Cases in which the constitutionality of a statute ... is in question." This court has held, however, in cases involving direct review of agency action, that the court of appeals has "initial jurisdiction to review actions ... when the constitutionality of a statute is at issue." *Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988, 990 n. 1 (Colo.1991). This court reasoned that "the statutory exception to court of appeals jurisdiction concerning cases in which the constitutionality of a statute is in question extends only to 'appeals from final judgments of the district courts.'" *Id.* Thus the court of appeals

may consider the constitutionality of statutes in appeals taken from decisions of administrative tribunals. *See Floyd v. AMF Tuboscope, Inc.,* 817 P.2d 534 (Colo.App.1990); *Neoplan USA Corp. v. Industrial Claim Appeals Office,* 778 P.2d 312, 314 (Colo.App.1989); and *Matthews v. Industrial Comm'n,* 627 P.2d 1123, 1125 (Colo. App.1980).
Arapahoe Roofing's contention that this court has jurisdiction over its constitutional challenges based on § 13–4–102 is thus without merit.

12. The taxpayer's duties are delineated in § 53–101, which states:
> It shall be the duty of every taxpayer hereunder to keep and preserve suitable records of all sales and purchases made by the taxpayer and such other books or accounts as may be necessary to determine the amount of the tax for the collection or payment of which the taxpayer is liable under this article.

The Manager may demand that the taxpayer make such records available for inspection and audit.

13. A taxpayer may, within that twenty-day period, "petition the manager in writing for a revision, modification or cancellation of such assessment." DRMC § 53–117(c). The taxpayer must provide a written statement of facts and reasons supporting any such petition. *Id.*

total cost of a project. *Id.* at 447, 586 P.2d at 661. This court held that the City of Broomfield could not establish a *sixty percent* tax, as such tax would violate the statutory limit of seven percent provided in section 29-2-108, 12A C.R.S. (1973). *Id.*

The Manager in this case found that the assessment was based on a list that included a valuation of the materials purchased by Arapahoe Roofing for the projects.[14] The tax imposed in this case was not equal to sixty percent of the total estimated cost of the projects and thus does not contravene this court's holding in *Rancho Colorado.*[15]

■ Arapahoe Roofing also argues that the Manager abused her discretion because the list on which the City based its estimate contained errors, including one project allegedly performed in another city. Arapahoe Roofing could have, but did not, petition the City for revision or modification of the assessment to reflect alleged errors in the twenty-day period following the demand. Arapahoe Roofing contends that such errors amount to double taxation. Arapahoe Roofing does not, however, identify the specific amounts taxed in excess of those actually owed, nor does Arapahoe Roofing suggest what aggregate amount it owes.

Arapahoe Roofing's arguments alone do not convince us that the Manager acted in an arbitrary and capricious fashion in affirming the City's estimate, or that the record as a whole does not competently support the estimate.

■ Lastly, Arapahoe Roofing argues that the Manager erred in finding that Arapahoe Roofing failed to meet its burden of proving that it previously paid sales tax on purchases. Arapahoe Roofing contends that this finding overlooks both the letter that Arapahoe Roofing sent to its vendors requesting the vendors to charge the appropriate sales tax on all purchases and evidence that Arapahoe Roofing did in fact

pay some amount of sales tax on one specific job.

A letter requesting imposition of sales tax does not by itself demonstrate that a sales tax has been paid. Arapahoe Roofing does not clearly articulate the amount it was overcharged as a result of producing evidence relating to the one specific job.

Under section 53-101, Arapahoe Roofing is required to maintain records and to produce such records upon demand of the Manager. The Manager made three separate requests for Arapahoe Roofing to demonstrate the amount of sales taxes paid to the City by producing its records. Arapahoe Roofing had twenty days in which to contest the amount of taxes suggested in the proposed demand after receiving notice of it. Arapahoe Roofing could have presented its records of accounts to the Manager at its administrative hearing. Although Arapahoe Roofing had numerous opportunities, it clearly failed to meet its burden of proving that it previously paid sales taxes. The Manager thus assessed use taxes based on an estimate derived from project permits that Arapahoe Roofing submitted to the City.

Arapahoe Roofing has failed to demonstrate that the Manager acted in an arbitrary or capricious fashion in affirming the City's estimate, or that the City's estimate was unsupported by competent evidence despite evidence tending to prove that Arapahoe Roofing paid some sales tax on one project.

## IV.

■ Arapahoe Roofing contends that it is entitled to *de novo* review of this case in district court based on this court's decision in *Walgreen v. Charnes,* 819 P.2d 1039 (Colo.1991). We disagree.

*Walgreen* was decided during the pendency of Arapahoe Roofing's appeal—after the district court entered its order in the present case, but before Arapahoe Roofing filed its opening brief in this case. In *Walgreen,* we noted that taxpayers can

14. *See supra* note 3.

15. Arapahoe Roofing has not argued that the tax imposed failed to comply with the schedule detailed in § 53-98 of the DRMC. Arapahoe Roofing only argues that the sixty-percent valuation was selected arbitrarily.

seek judicial review under either municipal procedures or under section 29–2–106.1, 12A C.R.S. (1987). *Id.* at 1049 n. 9; § 29–2–106.1(8)(c), –106.1(9), 12A C.R.S. (1986). Walgreen sought *de novo* review under section 29–2–106.1, and not appellate review under the DRMC. In *Walgreen,* we did not consider the constitutionality of various sections of the DRMC.

Unlike Walgreen, Arapahoe Roofing did not seek *de novo* review when pursuing judicial review in the district court. Arapahoe Roofing elected to pursue review under the DRMC. While Arapahoe Roofing relies on *Walgreen,* the gravamen of Arapahoe Roofing's request for *de novo* review is re-examination of the burden of proof placed on taxpayers by the DRMC, and of whether the Manager acted arbitrarily or capriciously.[16] In its opening brief to this court, Arapahoe Roofing contended that "[a]t trial *de novo* the Manager should be required to substantiate the delinquency assessment with some factual basis."

We have previously determined that assessment was supported by competent evidence—namely, from construction permits authored and filed with the City by Arapahoe Roofing. We have also noted that the DRMC places the burden on the taxpayer, Arapahoe Roofing, to maintain and produce records to the City upon the City's demand in order to ascertain the correctness of proposed assessments. DRMC § 53–101.

We agree with Arapahoe Roofing that the appropriate remedy in this case is not remand to the district court for *de novo* review. For the foregoing reasons, the judgment of the district court is affirmed.

---

**16.** In its oral argument, Arapahoe Roofing stated to this court:

I think the appropriate remedy for our case is ... not necessarily back to the district court for a trial *de novo.* I think this case should go back and start at the Revenue level, with an appropriate expression from this court as to what is required for a deficiency, a tax deficiency notice to be granted some sort of presumption of correctness—that is, what level of foundation needs to be shown by the taxing authority before the burden of proof shifts to the taxpayer who otherwise is trying to prove a rather huge negative.

In its opening brief to this court, Arapahoe Roofing contends that, under *Walgreen,* it was deprived of due process by not being afforded *de novo* review. *Walgreen* does not stand for the proposition that the review provided by the DRMC deprives aggrieved taxpayers of their due process rights.