**Susan LOBB, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO, Premier Care Services, Inc., Colorado Compensation Insurance Authority, Department of Labor & Employment, Division of Workers' Compensation, and Mary Ann Whiteside, Director, Division of Workers' Compensation, Respondents.**

No. 97CA0212.

Colorado Court of Appeals, Div. II.

Oct. 30, 1997.

Dale A. Gaar, P.C., Dale A. Gaar, Denver, for Petitioner.

No Appearance for Respondents Industrial Claim Appeals Office of the State of Colorado and Premier Care Services, Inc.

Brandee Defalco–Galvin, Denver, for Respondent Colorado Compensation Insurance Authority.

Michael J. Steiner, Denver, for Respondents Premier Care Services, Inc., and Colorado Compensation Insurance Authority.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John D. Baird, Assistant Attorney General, Denver, for Respondents Department of Labor & Employment, Division of Worker' Compensation and Mary Ann Whiteside, Director, Division of Workers' Compensation.

Opinion by Judge DAVIDSON.

Petitioner, Susan Lobb (claimant), challenges the constitutionality of certain portions of the Workers' Compensation Act by asserting that they deny her equal protection. We uphold the constitutionality of 8–40–201(16.5)(a) and 8–42–111(3), C.R.S.1997, and, therefore, affirm the Panel's order.

Claimant suffered a closed-head injury in September 1993 during the course of her employment as an administrator for a nursing home management company. The parties stipulated that she is not employable in the open, competitive labor market.

After a three-day hearing concerning claimant's request for permanent total disability, the Administrative Law Judge (ALJ) found that Premiere Care Services, Inc., (employer) offered in writing to reemploy claimant in a position in which her primary duty would be to place pre-printed labels on mailings. Other duties would be available for claimant to perform one at a time if she felt capable of doing so, and would include the following: open and date mail, photocopy, answer the telephone, file invoices, maintain and update materials, and record data. The record shows that claimant had the option to work at home and that the employer provided transportation for her.

The ALJ further found that the offered employment was designed to be flexible to accommodate the claimant's physical needs and, therefore, allowed her to work as many hours as she was able up to full-time employment. The ALJ relied upon claimant's primary care physician, who opined that claimant could perform the offered job, and two of the vocational rehabilitators, who opined that the work offer was an appropriate method to allow claimant to earn wages.

Accordingly, the ALJ concluded that the claimant was not permanently totally disabled within the meaning of 8–40–201(16.5)(a) because she is capable of earning "any wages in the same or other employment." The Panel affirmed, noting its lack of jurisdiction over the constitutional issue.

Under 8–40–201(16.5)(a), permanent total disability means that the employee is unable to earn "any wages in the same or other employment." That section, with one exception, also places the burden of proof on the employee to prove such unemployability.

Identical language in 8–42–111(3) requires a permanently disabled employee who is capable of rehabilitation that would enable the employee to "earn any wages in the same or other employment" to accept any employment offered "by the same or other employer." See generally *McKinney v. Industrial Claim Appeals Office*, 894 P.2d 42 (Colo.App. 1995).

## I.

■ Claimant first asserts that the employer's offer did not constitute an offer for employment to earn wages. She argues that, since it was an arrangement for nominal pay regardless of the services performed, it was merely a charity offer. We disagree.

"Employment" is defined in 8–40–201(8), C.R.S.1997, as:

[A]ny trade, occupation, job, position, or process of manufacture or any method of carrying on any trade, occupation, job, position, or process of manufacture in which any person may be engaged.

■ The determination whether claimant can earn any wages is a factual determination for the ALJ and must be upheld if supported by substantial evidence. *Christie v. Coors Transportation Co.*, 919 P.2d 857 (Colo.App.1995), *aff'd*, 933 P.2d 1330 (Colo. 1997).

We agree with the Panel that the ALJ's factual finding that the position offered to claimant, in which she would engage in a variety of activities and be compensated at

the rate of $10 per hour, constituted "employment" within the meaning of the statute. The absence of criteria establishing a specific work schedule, performance standards, or a description of the benefits to the employer does not preclude a finding that there was an offer of employment. As the ALJ found, the claimant would initially be treated as a "trainee," standards would be imposed over time, and the work claimant was to perform had some value to the employer.

■ Here, while there was evidence that might have supported the claimant's argument that the offer was merely charitable in nature, the ALJ concluded, with record support, that the reemployment offer was bona fide. Therefore, that determination is binding regardless whether the record also contains evidence that, if credited, could support a contrary finding. See *Prestige Homes, Inc. v. Legouffe*, 658 P.2d 850 (Colo.1983) (finding supported by substantial, albeit conflicting evidence, binding on appeal).

*Best–Way Concrete Co. v. Baumgartner*, 908 P.2d 1194 (Colo.App.1995) does not require a different result. There, the claimant was not precluded from an award of permanent total disability benefits even though employer asserted that he earned "unspecified income" from an investment and former business. That award also was based upon resolution of the factual question whether the claimant was unable to earn wages in the same or other employment.

## II.

■ Claimant also asserts that the denial of permanent total disability benefits violates her right to equal protection. We perceive no constitutional defect.

■ In determining whether 8–40–201(16.5)(a) and 8–42–111(3) are constitutional, we begin with the presumption that they are valid. Therefore, the burden is on the claimant, as the challenging party, to prove the invalidity of the classification. *Naiden v. Epps*, 867 P.2d 215 (Colo.App.1993).

■ Since the receipt of workers' compensation benefits is not a fundamental right, the rational basis test applies. *Duran v. Indus-*

*trial Claim Appeals Office*, 883 P.2d 477 (Colo.1994).

■ Under the rational-basis standard of review, a statutory classification that singles out a group of persons for disparate treatment must be rationally based on differences that are real and not illusory and must be reasonably related to a legitimate state interest. *Higgs v. Western Landscaping & Sprinkler Systems, Inc.*, 804 P.2d 161 (Colo. 1991). Nevertheless, the General Assembly has the prerogative to draw reasonable classifications, and that a legislative distinction is imperfectly drawn does not by itself result in the denial of equal protection. *Duran v. Industrial Claim Appeals Office, supra*.

■ A statute can be stricken under the rational basis standard only if there exists no reasonably conceivable set of facts to establish a rational relationship between the statute and a legitimate governmental purpose. Simply because a statutory classification creates a harsh result in some instances does not mean that the statute fails to meet constitutional requirements under the rational basis standard. *Pace Membership Warehouse v. Axelson*, 938 P.2d 504 (Colo.1997).

■ The threshold question in an equal protection challenge is whether the legislation results in dissimilar treatment of similarly situated individuals. *Christie v. Coors Transportation Co., supra*. In order to establish that a classification violates equal protection provisions, the classification must arbitrarily single out a group of persons for disparate treatment from other persons who are similarly situated. *Pace Membership Warehouse v. Axelson, supra*.

Initially, we will assume, arguendo, that those claimants who are not employable in the open, competitive labor market and receive an offer of reemployment are similarly situated to those claimants who are not employable in the open, competitive labor market but do not receive any offer. See *Duran v. Industrial Claim Appeals Office, supra*, 883 P.2d at 482 fn.9 ("too exacting a focus" on classifications between claimants overlooks the fact that the Act "categorizes injured workers as a whole").

Persons in both classes seek an initial determination of eligibility for permanent total

disability benefits but arguably the two classes are treated differently based upon whether they are offered reemployment. See *Pace Membership Warehouse v. Axelson, supra;* see generally *Christie v. Coors Transportation Co., supra* (majority and concurring opinions disagreeing whether persons were similarly situated for equal protection analysis).

The purpose of the amendments to 8–40–201(16.5)(a) and 8–42–111 was to establish a stricter definition of permanent total disability. *McKinney v. Industrial Claim Appeals Office, supra.* The phrase "to earn any wages in the same or other employment" accomplishes this by providing a real and non-illusory bright line rule for the determination whether a claimant has been rendered permanently and totally disabled.

Furthermore, it is rational to provide an incentive to employers to reemploy previously valued workers who have suffered an injury during their employment. Cf. *Snyder Oil Co. v. Embree,* 862 P.2d 259 (Colo.1993) (purpose of the reemployment statute was to provide an incentive to the employer to continue to employ the injured employee). In that way, the express intent of the Act, to provide "quick and efficient delivery of disability and medical benefits" to injured workers "without the necessity of any litigation" and "at a reasonable cost to employers," is advanced. *Duran v. Industrial Claim Appeals Office, supra;* 8–40–102, C.R.S.1997.

Therefore, we conclude that the legitimate state goals of relieving injured workers from the adverse economic effects caused by disabling work-related injuries and reducing costs are furthered by 8–40–201(16.5)(a) and 8–42–111(3). Thus, neither state nor federal guarantees of equal protection are offended by the fact that, in certain instances, the classification may result in some inequity. See *Naiden v. Epps, supra.*

Order affirmed.

CRISWELL and ROTHENBERG, JJ., concur.