**Booth PEPPER, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OF-FICE OF the STATE of Colorado, City of Florence, and CIRSA, Respondents.**

No. 04CA0457.

Colorado Court of Appeals, Div. I.

Sept. 22, 2005.

Rehearing Denied Nov. 10, 2005.

Certiorari Granted April 17, 2006.*

* Justice EID does not participate.

Koncilja & Koncilja, P.C., James R. Koncilja, Lawrence D. Saunders, Stephen M. Johnston, Pueblo, Colorado, for Petitioner.

John W. Suthers, Attorney General, Y.E. Scott, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Ritsema & Lyon, P.C., T. Paul Krueger, II, Denver, Colorado, for Respondents City of Florence and CIRSA.

LOEB, J.

The sole issue in this appeal is whether § 8–40–202(1)(a)(I)(A), C.R.S.2005, violates equal protection guarantees because it excludes, at the option of the governmental body, members of volunteer police departments from the definition of an "employee" for purposes of workers' compensation coverage. We conclude that the statute is unconstitutional. Accordingly, we set aside the order of the Industrial Claim Appeals Office (Panel) concluding that Booth Pepper (claimant) was not an employee of the City of Florence (City), and we remand for further consideration of his workers' compensation claim.

This case was decided on stipulated facts. Claimant was an unpaid member of the City's volunteer police reserves on September 28, 2001, when he allegedly suffered mental impairment and experienced stress as a result of a shooting incident. At the time of the incident, claimant was performing his duties as a volunteer reserve police officer.

In pertinent part, § 8–40–202(1)(a)(I)(A) provides that, for purposes of the Workers' Compensation Act of Colorado (Act), § 8–40–101, et seq., C.R.S.2005, regularly employed police officers, firefighters, sheriffs, and deputy sheriffs are deemed employees. In addition, posse members and several types of volunteers, including volunteer firefighters and members of volunteer rescue, disaster, and ambulance teams, are deemed employees. However,

> [m]embers of volunteer police departments, volunteer police reserves, and volunteer police teams or groups in any county, city, town, or municipality, while actually performing duties as volunteer police officers, *may be deemed employees* within the meaning of this paragraph (a) *at the option of the governing body* of such county or municipality.

(Emphasis added.)

The City chose not to include members of the volunteer police reserves as employees

under its workers' compensation insurance policy. Therefore, the administrative law judge (ALJ) determined that claimant was not the City's employee on the date of the alleged injury.

In his brief in support of his petition to review, claimant challenged the validity of § 8–40–202(1)(a)(I)(A) on equal protection grounds. The Panel, citing its lack of jurisdiction over constitutional issues, affirmed the ALJ's order.

■ Claimant contends there is no rational basis for allowing a governing body to exclude volunteer police from being considered employees under the Act, when all other similarly situated groups listed in the statute, whether regularly employed or volunteers, are deemed employees. We agree that the classification offends guarantees of equal protection.

### I.

■ At the outset, we reject the Panel's assertion that the constitutionality of this statute is not properly before this court.

■ In cases involving direct review of agency action, the court of appeals has initial jurisdiction to review actions when the constitutionality of a statute is at issue. *Arapahoe Roofing & Sheet Metal, Inc. v. City & County of Denver*, 831 P.2d 451 (Colo.1992) (court of appeals may consider the constitutionality of statutes in appeals taken from decisions of administrative tribunals); *Celebrity Custom Builders v. Indus. Claim Appeals Office*, 916 P.2d 539 (Colo.App.1995)(constitutionality may be addressed by review of action brought in either district court or administrative proceeding). Contrary to the Panel's argument, the constitutionality of a statute need not be raised before the ALJ in order to preserve the issue for consideration by this court. *See Indus. Comm'n v. Bd. of County Comm'rs*, 690 P.2d 839, 844 n. 6 (Colo.1984)(constitutional issues arising in cases commenced in what is now the Department of Labor and Employment may be raised for the first time on appeal to the court of appeals); *Montezuma Well Serv., Inc. v. Indus. Claim Appeals Office*, 928 P.2d 796 (Colo.App.1996)(fact that petitioners did not raise constitutional issue before the ALJ and Panel did not preclude them from raising the issue before the court of appeals); *Colo. Comp. Ins. Auth. v. Indus. Claim Appeals Office*, 907 P.2d 676 (Colo.App.1995)(constitutional challenges to the facial validity of statutes need not be raised in administrative proceedings in order to be asserted on appeal).

Accordingly, claimant's failure to raise the constitutionality of the statute before the ALJ does not preclude our consideration of the issue.

### II.

■ In determining whether § 8–40–202(1)(a)(I)(A) is constitutional, we begin with the presumption that it is valid. *See Dillard v. Indus. Claim Appeals Office*, 121 P.3d 301, 2005 WL 1303265 (Colo.App. No. 04CA0680, June 2, 2005). Therefore, the burden is on claimant, as the challenging party, to prove the statute is unconstitutional beyond a reasonable doubt. *See MGM Supply Co. v. Indus. Claim Appeals Office*, 62 P.3d 1001 (Colo.App.2002).

### A.

■ The Panel characterizes claimant's appeal to the Panel as a facial challenge, but the appeal to this court as a challenge to the application of the statute. We reject this characterization and conclude that claimant's appeal constitutes a facial challenge to § 8–40–202(1)(a)(I)(A).

■ The distinction between a "facial" and an "as applied" equal protection challenge is not always clear cut. A facial challenge is supported where the law by its own terms classifies persons for different treatment. In contrast, a statute, even if facially benign, may be unconstitutional as applied where it is shown that the governmental officials who administer the law apply it with different degrees of severity to different groups of persons who are described by some suspect trait. *W. Metal Lath v. Acoustical & Constr. Supply, Inc.*, 851 P.2d 875, 880 n. 7 (Colo.1993).

Here, the challenged classification appears on the face of the statute because volunteer police are singled out for treatment different from that of regular police and firefighters, as well as from that of other categories of emergency volunteers. Thus, as we understand claimant's argument, he makes a facial challenge, and therefore we need not consider the Panel's arguments regarding the application of the statute.

## B.

The threshold question in an equal protection challenge is whether the legislation results in dissimilar treatment of similarly situated individuals. To violate equal protection provisions, the classification must arbitrarily single out a group of persons for disparate treatment from that of other persons who are similarly situated. *Peregoy v. Indus. Claim Appeals Office*, 87 P.3d 261, 265 (Colo.App.2004).

Claimant argues that volunteer police are similarly situated to all the other groups included in the statute because they are subject to the same perils as regularly employed police officers and firefighters, and perhaps more perils than some of the other volunteer groups. The City argues that the groups to be compared should be limited to only volunteer police, some of whom, when injured, will receive workers' compensation benefits, and some of whom will not, depending on the decision of their governing body.

We adopt a middle ground as the basis for comparison. We conclude that, for purposes of our equal protection analysis, volunteer police are similarly situated to all the other types of volunteers included in the statute. *See Duran v. Indus. Claim Appeals Office*, 883 P.2d 477, 482 n. 9 (Colo.1994)("too exacting a focus" on classifications of claimants overlooks the fact that the Act "categorizes injured workers as a whole").

## C.

Because the receipt of workers' compensation benefits is not a fundamental right, the rational basis test applies to claimant's equal protection challenge. *See Peregoy v. Indus. Claim Appeals Office, supra;*

*Kroupa v. Indus. Claim Appeals Office*, 53 P.3d 1192 (Colo.App.2002). Under that test, a statutory classification will stand if it bears a rational relationship to a legitimate governmental objective and is not unreasonable, arbitrary, or capricious. Further, if any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume that those facts exist. *Christie v. Coors Transp. Co.*, 933 P.2d 1330, 1333 (Colo.1997); *Peregoy v. Indus. Claim Appeals Office, supra.*

Counties, cities, and municipalities have a legitimate interest in encouraging individuals to volunteer for dangerous activities that benefit the community. *See Parker Fire Prot. Dist. v. Poage*, 843 P.2d 108 (Colo.App. 1992)(clear legislative intent of § 8–40–202(1)(a)(I), C.R.S.2005, which provides for compensation at the maximum rate for volunteers who qualify as employees, is to encourage voluntary public service). These governing bodies also have a legitimate interest in controlling their costs. *See* § 8–40–102(1), C.R.S.2005 (express intent of the Act is to provide "quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation"); *McManus v. Indus. Claim Appeals Office*, 81 P.3d 1074 (Colo.App.2003).

Here, however, we do not perceive how controlling costs relates to the statutory disparity between the two groups of volunteers. We can conceive of no valid purpose for allowing police volunteers to be excepted from workers' compensation coverage, while mandating that all other volunteers, who similarly serve a vital function and are subject to similar risks and perils, be covered. Thus, even though we recognize that reducing costs may be a legitimate interest, we conclude the statute is not rationally related to achieving that purpose because it provides coverage for some volunteers but not others who are similarly situated. *See Peregoy v. Indus. Claim Appeals Office, supra; see also Whiteside v. Smith*, 67 P.3d 1240 (Colo.2003)(in determining whether due process is adequately afforded, financial and administrative burdens alone are not given the controlling weight).

The complete denial of benefits to volunteer police, at the governing body's option, is similar to another complete denial of benefits that did not pass constitutional scrutiny. In *Industrial Claim Appeals Office v. Romero*, 912 P.2d 62, 69–70 (Colo.1996), the supreme court held:

> [E]ven if we assume that preventing duplication of benefits and reducing the cost of workers' compensation insurance are legitimate governmental purposes, section 8–42–111(5)[, C.R.S.2005,] is not rationally related to achieving those purposes because it eliminates benefits for totally disabled claimants who are age sixty-five or older, but provides such benefits for partially disabled claimants of the same age. Such disparate treatment of similarly situated individuals violates the equal protection guarantees of the state and federal constitutions and cannot be upheld.

The holding in *Romero* compels us to conclude that § 8–40–202(1)(a)(I)(A) violates constitutional guarantees of equal protection. The disparate treatment of totally disabled claimants who are age sixty-five or older under § 8–42–111(5) is not measurably different from the disparate treatment afforded volunteer police under § 8–40–202(1)(a)(I)(a). Both statutes completely eliminate benefits for a particular group of injured workers while affording coverage to similarly situated workers. In *Romero*, as here, the argument that cost reduction was a legitimate governmental purpose stops short of explaining how the disparate treatment in each case bears a rational relationship to fiscal concerns.

Although *Romero* was later distinguished in *Culver v. Ace Electric*, 971 P.2d 641 (Colo. 1999), we are not convinced that any such distinguishing factors mandate a different result here. *Culver* involved an offset provision that reduced benefits to permanently totally disabled claimants after age sixty-five only if the worker was also eligible to receive Social Security or employer-paid retirement benefits. The supreme court noted that the complete elimination of benefits in *Romero* was significantly different from the coordination of benefits at issue in *Culver*. *See Culver v. Ace Electric, supra*, 971 P.2d at 647.

Here, too, the complete elimination of benefits for volunteer police is different from the coordination of benefits through the offset at issue in *Culver*. And inasmuch as neither the City nor the Panel has articulated a conceivable set of facts linking the complete denial of benefits for volunteer police to any legitimate governmental purpose, we conclude the supreme court's reasoning in *Romero* is persuasive and applicable here.

We are not unmindful of the General Assembly's prerogative to draw reasonable classifications, and we recognize that a legislative distinction, even if imperfectly drawn, does not by itself result in the denial of equal protection. *See Duran v. Indus. Claim Appeals Office, supra; Lobb v. Indus. Claim Appeals Office*, 948 P.2d 115 (Colo.App.1997). We also recognize that a statutory classification that creates a harsh result in some instances does not necessarily fail to meet constitutional requirements under the rational basis standard. *See Pace Membership Warehouse v. Axelson*, 938 P.2d 504 (Colo. 1997); *Lobb v. Indus. Claim Appeals Office, supra*. Here, however, we conclude the classification and disparate statutory treatment of volunteer police and other volunteers are not reasonable. Therefore, claimant is entitled to relief from the harsh result of excluding volunteer police, at the government's option, from the definition of an "employee."

The order of the Panel is set aside, and the case is remanded for the ALJ's reconsideration of claimant's entitlement, as an employee, to workers' compensation benefits.

Judge MARQUEZ concurs.

Judge CARPARELLI dissents.

Judge CARPARELLI dissenting.

I dissent because I conclude that claimant has not met his burden of proof.

### I. Standard of Review and Burden of Proof

"Equal protection of the law requires the government to treat similarly situated persons in a like manner." *Buckley Powder Co. v. State*, 70 P.3d 547, 561 (Colo.App.2002).

When a statute treats some individuals differently and the basis of the differing treatment does not concern a suspect class or a fundamental right, we presume the General Assembly acted within its constitutional power despite the fact that, in practice, the statute results ·in some inequality. Therefore, such a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to ·justify it." *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Not only does a presumption of constitutionality apply to classifications analyzed under the rational basis test, but the challenging party also must overcome that presumption by proof beyond a reasonable doubt. *Tassian v. People*, 731 P.2d 672, 675 (Colo.1987).

To establish unconstitutionality, the challenging party must show beyond a reasonable doubt that no conceivable set of facts leads to· a legitimate governmental purpose and, thus, that it "arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated." *Garhart ex rel. Tinsman v.· Columbia/HealthONE, L.L.C.*, 95 P.3d 571, 583 (Colo.2004) (quoting *Culver v. Ace Elec.*, 971 P.2d 641, 646 (Colo.1999)); *see HealthONE v. Rodriguez*, 50 P.3d 879 (Colo.2002). "If any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume those facts exist." *Christie v. Coors Transp. Co.*, 933 P.2d 1330, 1333 (Colo.1997).

"[A] statute does not violate the equal protection guarantee because its classifications are imperfect." *Buckley Powder Co. v. State, supra,* 70 P.3d at 562. Indeed, when social or economic legislation is at issue, the Equal Protection Clause allows state legislatures wide latitude, and "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see Evans v. Romer*, 854 P.2d 1270 (Colo.1993). The supreme court has held that the state has a legitimate interest in fiscal solvency and in minimizing the cost of providing essential services. *See State v. DeFoor*, 824 P.2d 783, 790 (Colo.1992).

Administrative agencies do not have authority to pass on facial challenges to the constitutionality of statutes. Although a claimant may raise a facial challenge for the first time on review of an agency action where the constitutionality of a statute is at issue, the "proper forum is the district court where the party can seek a declaratory judgment." *Arapahoe Roofing & Sheet Metal, Inc. v. City & County of Denver*, 831 P.2d 451, 454 (Colo.1992); *see Colo. Ass'n of Pub. Employees v. Dep't of Highways*, 809 P.2d 988, 990 n. 1 (Colo.1991); *Kinterknecht v. Indus. Comm'n*, 175 Colo. 60, 485 P.2d 721 (1971); *Celebrity Custom Builders v. Indus. Claim Appeals Office*, 916 P.2d 539 (Colo. App.1995). A party who elects to present a facial challenge to the constitutionality of a statute by way of a declaratory judgment action in the district court has an opportunity to present evidence and argument to satisfy the burden of proof. In contrast, a party who presents a facial challenge for the first time on appeal from an agency decision forgoes that opportunity.

Here, the record contains only the following facts, to which the parties stipulated at the hearing: (1) claimant was performing his duties as an unpaid volunteer reserve police officer for the City in September 2001 when he was present at a shooting incident; (2) he filed a stress claim in 2003 alleging he experienced stress as a result of that incident; (3) he was sworn in as a temporary full-time patrol officer in October 2001; (4) the City chose not to deem volunteer police reserves to be employees; and (5) claimant was not an employee at the time of the shooting incident.

## II. Claimant Fails to Prove He is Similarly Situated

Claimant has the burden of proving that the 1977 amendment, Colo. Sess. Laws 1977, ch. 87, § 8–41–106 at 450, arbitrarily singles out police volunteers for disparate treatment from that of other similarly situated persons. *See Indus. Claim Appeals Office v. Romero*, 912 P.2d 62, 66 (Colo.1996); *Lobb v. Indus.*

*Claim Appeals Office,* 948 P.2d 115 (Colo. App.1997).

### A. Regularly Employed Police and Volunteer Police

Claimant first contends that volunteer police officers are similarly situated to regularly employed police officers because they are subject to the same perils and risk their lives to protect the public. He contends that the two groups are virtually indistinguishable in that an individual on the street would not know the difference between a volunteer and a regularly employed police officer because volunteers and employees wear the same uniform, use the same equipment, have the same training, and are subject to identical risks.

However, because the record contains no evidence supporting these contentions, I cannot conclude that they are true. Not only is there no evidence that they are true in Florence, but, more important, there is no evidence that they are true throughout the state. Indeed, the possibility that these contentions are true in some localities and untrue in others might be a rational basis for the General Assembly to grant discretion to local governments to decide whether to provide police volunteers with the same workers' compensation coverage as is provided to regularly employed police.

Moreover, unlike the police volunteers, regularly employed police have an employment relationship with the government entity and, thus, are paid and have a legal obligation to perform the full scope of police duties. Still further, if we accept claimant's argument, are we then to conclude that all volunteer workers who perform the same functions as regularly employed workers are being denied equal protection because they are not covered by the Act? Are we also to conclude that parents who volunteer at schools are similarly situated to some who are regularly employed and, thus, are constitutionally entitled to coverage? These latter examples illustrate why claimant's burden of proving he is similarly situated is not perfunctory and cannot be achieved without record support and proceedings that enable thorough exploration of the facts.

### B. Other Volunteers and Police Volunteers

Claimant contends that volunteer police officers provide service to the community equal to that provided by volunteer firefighters. He also contends that volunteer police officers serve a vital function equal to that served by other volunteers provided coverage by the Workers' Compensation Act, § 8–40–101, et seq., C.R.S.2005 (the Act). And he contends that police volunteers serve in exactly the same capacity as members of posses.

Once again, the record contains no evidence regarding the extent to which posses and emergency volunteers are used in the state and the typical scope of their duties, nor does it contain corresponding information regarding police volunteers. And, once again, without record support, I cannot conclude that claimant's contentions regarding the equality of the functions are true in Florence or across the state.

Therefore, I first conclude that the record provides no support for claimant's contention that he is similarly situated to others for whom the Act mandates coverage and, thus, claimant has failed to satisfy this aspect of his burden of proof.

Although I conclude that claimant has failed to prove that he, other regular employees, and volunteers referenced in the Act are similarly situated, because the majority has concluded otherwise, it is appropriate to address claimant's other contentions.

### III. Claimant Fails to Prove the Lack of a Rational Basis

Even if I assume that claimant is similarly situated, I cannot conclude beyond a reasonable doubt that the General Assembly's grant of discretion to local governments with regard to police volunteers arbitrarily singles out police volunteers for disparate treatment and serves no legitimate government purpose.

### A. Governmental Purpose

The purpose of the Act is to assure the quick and efficient delivery of disability and medical benefits to injured workers at a rea-

sonable cost to employers. Section 8–40–102(1), C.R.S.2005; *see Colo. AFL–CIO v. Donlon,* 914 P.2d 396, 402 (Colo.App.1995) ("The state has a legitimate interest in controlling the cost to employers of the workers' compensation system.").

The General Assembly amended the former § 8–41–106(1)(a)(I) in 1977, Colo. Sess. Laws 1977, ch. 87, § 8–41–106 at 450, and has since incorporated it into § 8–40–202(1)(a)(I)(A), C.R.S.2005. Before 1977, the definition of "employee" included regularly employed police, firefighters, sheriffs, deputy sheriffs, and posse members who provide law enforcement assistance to county sheriffs. It also included various volunteers who do not engage in law enforcement, such as volunteer firefighters, search and rescue volunteers, disaster volunteers, ambulance volunteers, and civil air patrol volunteers (emergency volunteers). It did not include police volunteers. When the option for local governments to provide coverage for police volunteers was added, the General Assembly declared it necessary for the immediate preservation of the public peace, health, and safety. Colo. Sess. Laws 1977, ch. 87, § 8–41–106 at 451.

Contrary to claimant's contention, § 8–40–202(1)(a)(I)(A) does not deny workers' compensation coverage to police volunteers. It only grants discretion to local governments to make that determination.

Claimant contends that the purpose of all statutes is to protect the citizens of the state. He argues that the 1977 amendment does not serve this purpose because it simply transfers the care of injured police volunteers to other government agencies and, thus, causes the citizens of the state to bear the burden of their injuries and results in no financial savings to the citizens. I conclude that claimant's general statement of the purpose of statutes does not provide a valid basis to determine whether a particular statute violates equal protection. In addition, I find no record support for this argument, and I am not persuaded beyond a reasonable doubt by its logic.

Claimant also contends that the purpose of the Act is to provide benefits to injured workers with the intent of returning them to the work force as productive citizens. However, there is no basis to conclude that the purpose of the Act is to provide benefits to injured volunteers with the intent of returning them to the volunteer force. Therefore, to the extent claimant's argument is based on this premise, I am not persuaded.

Claimant also asserts that a local government's decision not to provide coverage for police volunteers would require volunteers to pay for their own care, may cause the volunteers to run out of money, may result in their applying for government benefits, or may result in their failing to receive treatment. He argues that, as a result, the 1977 amendment does not serve the purpose of saving taxpayers the expense of compensating injured workers. At best, claimant is arguing that the purpose of the 1977 amendment is to save taxpayers the cost of disability benefits. The record contains no evidence to support these assertions.

Instead, I conclude that the purposes of the Act and the 1977 amendment are to assure the quick and efficient delivery of disability and medical benefits to injured workers, to do so at a reasonable cost to employers, and to preserve the public peace, health, and safety. Section 8–40–102(1); *see* Colo. Sess. Laws 1977, ch. 87, § 8–41–106 at 451; *Colo. AFL–CIO v. Donlon, supra.* In addition, the 1977 amendment plainly reveals the General Assembly's desire to enable local governments to provide coverage for police volunteers should they choose to do so. It is claimant's burden to prove beyond a reasonable doubt that there is no conceivable set of facts upon which the General Assembly's grant of discretion to local governments with regard to police volunteers, but not with regard to regularly employed police and other volunteers, serves a legitimate governmental objective. I conclude that he has not met this burden.

## B. Rational Basis

When the 1977 amendment was passed, local governments were already bearing the cost of coverage for those previously identified as employees under the Act. The record contains no proof that police volunteers are

similarly situated to emergency volunteers with regard to the cost of workers' compensation insurance coverage. It contains no proof regarding the general availability of workers' compensation insurance for police volunteers at the time of the 1977 amendment. Even if such insurance were available, the record contains no proof regarding whether it was available to any city for the asking or only under certain conditions, no proof regarding the cost of coverage, no proof that underwriters perceived the risks to which police volunteers were exposed to be similar to those to which emergency volunteers were exposed, and no proof regarding its cost in comparison to the cost for emergency volunteers and posses. *See, e.g.,* Thomas J. DeMarino, *Primer on Permanent Disability in the Colorado Workmen's Compensation Law,* 57 Den. U.L.Rev. 573, 574 n. 4 (1986)(from July 1, 1975 to January 1, 1979, 52,287 workers' compensation claims were litigated and the State Compensation Insurance Fund paid $51,738,526 in benefits).

Indeed, claimant acknowledges that an argument can be made that the 1977 amendment allows local governments to save money, that there is "no doubt that when the legislature was drafting [the 1977 amendment] the intent was to allow small municipalities to hire volunteer police officers to serve the vital job of protecting [citizens] without incurring the expense of workers' compensation insurance," and that "there may be some minimal savings to the municipality itself." He then argues that such minimal savings are contrary to the purpose of the Act, do not alleviate the taxpayers' burden of paying for the care of injured police volunteers, and simply shift that burden to other governmental agencies. Thus, he concludes, the purpose of the Act has been thwarted.

The effect of this argument is to admit that the economic impact of the 1977 amendment on local governments serves a legitimate governmental purpose. Moreover, in my view, claimant's argument poses social and economic questions that are within the province of the legislature, not this court.

Claimant also contends that "there is no rational basis why a regular police officer should receive workers' compensation benefits while a volunteer police officer does not." He argues that there is no conceivable reason (1) to "exclude volunteer police officers over regular officers if they in essence have the identical job"; (2) to provide coverage to volunteer firefighters and not to volunteer police officers; (3) to exclude volunteer police officers "when other obvious volunteer groups are not excluded"; (4) to provide coverage to a volunteer police officer receiving training to become a police officer, but not to other volunteer police officers; and (5) to provide coverage to members of a posse but not to volunteer police officers. Each of these arguments asserts that there is no reason to *deny coverage* to police volunteers. None of them assert that there is no conceivable set of facts upon which the General Assembly's grant of discretion to local governments with regard to police volunteers could serve a legitimate governmental objective. If anything, these arguments challenge the City's application of the 1977 amendment, not the amendment itself.

To the extent this aspect of claimant's argument can be construed as a challenge to the 1977 amendment on its face, the record contains no proof about the extent to which local governments in the state use police volunteers and emergency volunteers, the scope of the duties local governments assign to police volunteers and emergency volunteers, or each local government's need to motivate citizens to volunteer to serve as police volunteers and emergency volunteers. In short, claimant has not proved beyond a reasonable doubt that the 1977 amendment arbitrarily singles out police volunteers and that there is no conceivable set of facts that would lead to the conclusion that the grant of discretion to local governments with regard to police volunteers serves a legitimate governmental purpose.

### C. *Romero*

Unlike the majority, I conclude that *Industrial Claim Appeals Office v. Romero, supra,* does not compel the conclusion that § 8–40–202(1)(a)(I)(A) violates equal protection.

The provision at issue in *Romero* eliminated the benefits of totally disabled workers

who were age sixty-five and older. The supreme court held that "discrimination against persons age sixty-five and older who are permanently and totally disabled from a work-related injury is not rationally related to the asserted purpose of preventing duplicative benefits." *Indus. Claim Appeals Office v. Romero, supra,* 912 P.2d at 68–69. In contrast, the provision here did not eliminate benefits. Instead, it expanded the Act to permit local governments to provide benefits for a new class of recipients.

Moreover, the differing treatment here is not based on age. Instead, if police volunteers are compared to regularly employed police officers, the differing treatment could conceivably be based on the difference in employment status. If they are compared to emergency volunteers and posses, it could conceivably be based on the difference in the work performed, the city's need for such volunteers, or the cost of providing coverage based on the differing work.

Consequently, I conclude that claimant has not shown that the General Assembly's grant of discretion to local governments regarding police volunteers violates the right to equal protection.

### IV. Claimant Failed to Raise Constitutionality As Applied

At best, claimant states a challenge to the City's decision not to provide coverage to police volunteers and, thus, to its application of the 1977 amendment.

Although administrative agencies do not have authority to pass on facial challenges to the constitutionality of statutes, they have authority to determine whether an otherwise constitutional statute has been unconstitutionally applied. *Horrell v. Dep't of Admin.,* 861 P.2d 1194 (Colo.1993).

Because claimant did not raise this issue before the administrative law judge, I would decline to consider it.

I would affirm the Panel's order.