MAGNETIC ENGINEERING, INC., and State Farm Fire and Casualty Co., Petitioners,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado and Michael Marshall, Respondents.

No. 99CA1380.

Colorado Court of Appeals, Div. III.

June 8, 2000.

Clifton, Hook & Bovarnick, P.C., James R. Clifton, Harvey D. Flewelling, Denver, Colorado, for Petitioners.

No Appearance for Respondent the Industrial Claim Appeals Office.

Shakeshaft, Chernushin & Donohoe, P.C., Kenneth J. Shakeshaft, Colorado Springs, Colorado, for Respondent Michael Marshall.

Opinion by Judge DAVIDSON.

In this workers' compensation proceeding, Magnetic Engineering, Inc., and its insurer, State Farm Fire and Casualty Co., (collectively employer) seek review of the final or-

der issued by the Industrial Claim Appeals Office (Panel) upholding an award of temporary total disability (TTD) benefits to Michael Marshall (claimant). We affirm.

Claimant suffered a compensable injury on April 17, 1996. He subsequently worked in a light-duty position until June 7, 1996, when employer moved its facility out of the country. He remained unemployed until July 1997 when he became a salesperson for a furnace company. That position ended in September 1997.

Claimant received temporary total disability benefits until September 25, 1996, when his treating physician placed him at maximum medical improvement (MMI). Later, claimant requested the reinstatement of TTD benefits based upon the results of a division-sponsored independent medical examination (IME) performed on April 16, 1997, which determined that he was not at MMI as of that date.

Claimant's request for TTD benefits covered the period from January 1, 1997, when claimant's unemployment benefits stopped, through October 27, 1997.

Employer contested liability for the benefits asserting, as grounds, that claimant was at MMI until April 15, 1997, that he had refused to submit to a medical examination pursuant to a request made by employer on May 1, 1997, and that he had returned to regular employment.

Following an evidentiary hearing, the Administrative Law Judge (ALJ) rejected employer's arguments and entered an award of TTD benefits for the requested period.

The Panel upheld the award on review.

### I.

Employer first contends that the ALJ erred in awarding claimant TTD benefits from January 1, 1997, to April 15, 1997, because claimant was at MMI during that period. We disagree.

Reaching MMI constitutes one of the statutory conditions for the termination of temporary disability benefits. Section 8–42–105(3)(a), C.R.S.1999; *Blue Mesa Forest v. Lopez*, 928 P.2d 831 (Colo.App.1996).

A claimant is at MMI when the underlying condition causing the disability has become stable and no further treatment will improve that condition. Section 8–40–201(11.5), C.R.S.1999. The authorized treating physician makes the initial determination of MMI. *See* Section 8–42–107(8)(b), C.R.S.1999; *Dependents of Nunnally v. Wal–Mart Stores, Inc.*, 943 P.2d 26 (Colo.App.1996).

Either party may request a division-sponsored IME if a dispute arises concerning the treating physician's finding as to MMI, and the opinion of the IME physician has presumptive effect unless overcome by clear and convincing evidence. *Colorado AFL–CIO v. Donlon*, 914 P.2d 396 (Colo.App. 1995). Whether a party has overcome the IME's opinion as to MMI is a question of fact for the ALJ as the sole arbiter of conflicting medical evidence. *Postlewait v. Midwest Barricade*, 905 P.2d 21 (Colo.App.1995).

In his report, the IME physician stated:

I disagree at this time that Mr. Michael Marshall is at maximal medical improvement. I am not stating though by this statement that he has not in the past been at maximal medical improvement but can only state categorically that at this time he is not ... this patient has the potential to benefit from a medial epicondylectomy....

The physician also answered "no" in response to the question on his information sheet which asked whether he agreed with the treating physician's date of MMI.

The ALJ specifically referred to the IME physician's opinion regarding MMI and also noted that the physician's report recorded claimant's continued difficulties with uninterrupted sleep, positioning his arm, and a painful burning sensation.

### II.

Employer, in arguing that claimant remained at MMI until the date of the IME, maintains that the IME physician did not dispute the initial finding of MMI by the treating physician. Employer urges, therefore, that claimant was required to prove by clear and convincing evidence that he was not at MMI prior to April 16, 1997. Employ-

er further argues that the ALJ's failure to enter findings regarding whether claimant sustained that burden rendered the ALJ's order fatally defective and demonstrated that the ALJ misapplied the proper legal standard. We are not so persuaded.

■ Initially, we note that the ALJ is not held to a crystalline standard in articulating his findings of fact, *Riddle v. Ampex Corp.,* 839 P.2d 489 (Colo.App.1992), and we are able to discern from the order the reasoning which underlies the award of TTD benefits for the period prior to the IME.

■ We also agree with the Panel that the report of the IME physician is subject to conflicting inferences concerning the claimant's MMI status prior to the IME on April 16, 1997. As the Panel points out, the combined effect of the IME physician's report and his response on the information sheet provides sufficient support for the ALJ's inference that the IME physician did not believe claimant to be at MMI prior to April 16, 1997. Moreover, such an inference is particularly reasonable in light of the evidence that claimant had suffered ongoing problems with his right arm and shoulder since September 26, 1996, the treating physician's date of MMI. It also accords with the IME physician's recommendation that surgery be explored.

■ We, therefore, conclude that the Panel appropriately determined that the meaning of the IME physician's report presented a question of fact for the ALJ to resolve. *See Blue Mesa Forest v. Lopez, supra* (ambiguous opinions concerning a claimant's status as to MMI involve factual disputes to be resolved by the ALJ); *Metro Moving & Storage Co. v. Gussert,* 914 P.2d 411 (Colo. App.1995) (question of whether independent medical examination (IME) physician has properly applied medical guidelines for evaluation of permanent impairment in arriving at impairment rating is question of fact). We are further satisfied that the record supports the ALJ's resolution of that question in favor of claimant. *See Metro Moving & Storage Co. v. Gussert, supra* (conflicts in medical evidence in a workers' compensation proceeding are for resolution by the ALJ).

While we recognize that the ALJ did not explicitly state that he did, in fact, infer that the IME physician had not determined claimant to be at MMI prior to April 16, 1997, such an inference must be implied from the ALJ's determination to award TTD benefits. Thus, we reject employer's assertion that claimant was required to prove by clear and convincing evidence that he had not reached MMI prior to April 16, 1997.

### III.

Employer next contends that the ALJ erred in awarding benefits for the period after claimant refused to submit to a requested exam. Again, we disagree.

Employer's contention is premised upon § 8–43–404(3), C.R.S.1999, which provides in relevant part:

So long as the employee, after written request by the employer or insurer, refuses to submit to medical examination or vocational evaluation or in any way obstructs the same, all right to collect, or to begin or maintain any proceeding for the collection of, compensation shall be suspended. If the employee refuses to submit to such examination after direction by the director or any agent, referee, or administrative law judge of the division appointed pursuant to Section 8–43–208(1) or in any way obstructs the same, all right to weekly indemnity which accrues and becomes payable during the period of such refusal or obstruction shall be barred.

■ Employer asserts that claimant forfeited all right to temporary disability benefits under this statute when he refused to submit to the requested exam.

In addressing employer's contention, both the ALJ and the Panel relied upon previous decisions of the Panel which have held that the first two sentences of § 8–43–404(3) create a two-tiered system of sanctions for the refusal to submit to medical examinations. According to the Panel, the first sentence permits a temporary suspension of the right to collect benefits for the period during which the claimant refuses to attend the medical examination. The second sentence creates a permanent bar to collection of ben-

efits if the claimant fails to submit to examination after being ordered to do so by an ALJ or the Director.

When a reviewing court construes a statute, it must determine and give effect to the intent of the legislature by affording the language of the statute its plain and ordinary meaning. *Industrial Claim Appeals Office v. Orth*, 965 P.2d 1246 (Colo.1998). Deference also should be given to the interpretation of the statute by the officer or agency charged with its administration. *Weld County School District RE–12 v. Bymer*, 955 P.2d 550 (Colo.1998). Consequently, the Panel's interpretation will be set aside only if it is inconsistent with the clear language of the statute or with the legislative intent. *Support, Inc. v. Industrial Claim Appeals Office*, 968 P.2d 174 (Colo.App.1998).

The term "suspended" means temporarily disbarred, inactive, inoperative, or held in abeyance. *Webster's Third New International Dictionary* 2303. On the other hand, the term "barred" connotes a permanent withholding or prohibition. *See Webster's Third New International Dictionary* 174. Thus, the Panel's interpretation accords with the plain meaning of the operative terms at issue here. Pursuant to that interpretation, a temporary suspension of benefits may be followed by a reinstatement as long as there has been no order entered which has directed the claimant to submit to the examination.

Although employer suggests that a different ALJ in a prior hearing indicated that claimant had unreasonably refused to attend the examination, no order was entered. Further, claimant agreed in a letter dated August 5, 1997, to cooperate with the exam. However, employer did not reschedule the exam, and the parties subsequently stipulated to an exam by a different physician. Under these circumstances, the Panel properly held that claimant's right to collect benefits had been restored.

We also perceive no merit to employer's contention that the ALJ erred in failing to bar the benefits or enter findings regarding whether the benefits should be reduced or suspended. We find nothing in the record to substantiate the claim that the refusal to submit to the requested exam resulted in a continuing and detrimental effect on claimant's condition. Further, we note that the ALJ must make specific findings only as to the evidence found persuasive and determinative. The ALJ operates under no obligation to address either every issue raised or evidence which he or she considers to be unpersuasive. *General Cable Co. v. Industrial Claim Appeals Office*, 878 P.2d 118 (Colo.App.1994).

Finally, employer argues that the interpretation of the Panel produces an absurd result because it permits the claimant to obstruct the employer's right to demand an examination for an indefinite period and removes any incentive for the claimant to comply with such request. However, we agree with the Panel that the suspension, albeit temporary, provides adequate incentive for the claimant to cooperate with an employer's request for a medical examination. Further, the statute makes available more stringent sanctions when the claimant's actions so demand.

IV.

Finally, we also disagree with employer's contention that the ALJ erred in awarding TTD benefits for the period after claimant obtained employment.

Section 8–42–105(3)(b), C.R.S.1999, provides that TTD benefits terminate when the claimant returns to regular employment.

Here, the ALJ credited claimant's testimony and found that the restrictions and limitations from his injuries prevented a return to his pre-injury job duties. The ALJ also found that claimant worked for the furnace company as an independent contractor on a commission only basis and that he made no sales and earned no income in that capacity.

Employer contests the ALJ's additional finding that claimant had difficulty in completing the job duties of driving to different locations and argues that no evidence would support a finding, implicit or otherwise, that it was claimant's disability that prevented him from making the sales necessary to earn income. Thus, employer claims that nothing in the record supports the

ALJ's determination that the sales job did not represent a return to regular employment.

We view claimant's testimony and his medical history as more than sufficient support for the ALJ's findings. However, as both the ALJ and Panel recognized, even assuming the sales job constituted actual employment, the fact that no wages were earned means that claimant's disability benefits would still have been calculated at the rate in effect prior to his obtaining the sales position. *See* § 8–42–106, C.R.S.1999 (when the claimant returns to modified employment at less than his pre-injury rate of pay, temporary partial disability (TPD) benefits are to be calculated based upon sixty-six and two-thirds of the difference between the average weekly wage at the time of the injury and the average weekly wage during the temporary disability). Consequently, we do not discern any basis from claimant's attempt at employment which would relieve employer of responsibility for temporary benefits.

The order is affirmed.

Judge NEY and Judge ROY concur.