MGM SUPPLY CO. and Mid–Century Insurance Co., Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Anthony L. Martinez, Respondents.

No. 01CA1200.

Colorado Court of Appeals, Div. IV.

March 14, 2002.

Rehearing Denied May 23, 2002.

Certiorari Denied Jan. 27, 2003.

Joel N. Varnell & Associates, Chris Forsyth, Denver, CO, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

Law Office of O'Toole & Sbarbaro, P.C., John A. Sbarbaro, Denver, CO, for Respondent Anthony L. Martinez.

Opinion by Judge VOGT.

In this workers' compensation proceeding, MGM Supply Co. and its insurer, Mid–Century Insurance Co. (collectively employer), seek review of a final order of the Industrial Claim Appeals Office (Panel) upholding the award of permanent partial disability (PPD) benefits to Anthony L. Martinez (claimant). We affirm.

Claimant sustained an admitted industrial injury to his left shoulder. Surgery was performed to repair the shoulder separation, but claimant continued to suffer pain, even after a second surgery to remove a screw that had been placed in his shoulder during the first surgery.

After additional efforts proved unsuccessful, claimant's treating physician recommended a joint injection as a diagnostic tool to determine whether arthroscopic surgery would be beneficial. Claimant refused to undergo further injections or surgery. As a consequence, the treating physician placed claimant at maximum medical improvement (MMI) with a zero permanent impairment rating.

Employer filed a final admission consistent with the treating physician's rating. Claimant objected and requested a division-sponsored independent medical examination (DIME). The DIME physician agreed with the treating physician's recommendations concerning additional surgery and, accordingly, opined that claimant had not yet reached MMI. However, after noting that claimant had refused additional surgery, the DIME physician evaluated claimant's existing condition and assigned him a twenty-three percent whole-person permanent impairment rating.

Following an evidentiary hearing requested by employer, the Administrative Law Judge (ALJ) concluded that the DIME impairment rating had not been overcome by clear and convincing evidence, as required by § 8–42–107(8)(c), C.R.S.2001. The ALJ also found that claimant's refusal to undergo further injections and surgeries was reasonable and afforded no basis for reducing benefits pursuant to § 8–43–404(3), C.R.S.2001, which provides for such reduction if an injured employee refuses essential medical or surgical treatment.

I.

Employer contends that the ALJ's order awarding compensation is void because § 8–43–201, C.R.S.2001, which gives ALJs jurisdiction to hear and decide matters arising under the Workers' Compensation Act, conflicts with article VI, § 9 of the Colorado Constitution. We disagree.

■ We note at the outset that this court has initial jurisdiction to address challenges to the constitutionality of the Workers' Compensation Act. *See Celebrity Custom Builders v. Industrial Claim Appeals Office,* 916 P.2d 539 (Colo.App.1995).

■ Statutes are presumed constitutional, and the burden is on the challenging party to prove them unconstitutional beyond a reasonable doubt. *See Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993); *Lobb v. Industrial Claim Appeals Office,* 948 P.2d 115 (Colo.App.1997). Similarly, when the General Assembly creates an administrative agency and gives it specific enumerated powers and duties pursuant to the state's police power, the agency's exercise of those powers within the scope of its authority is entitled to a presumption of validity and constitutionality. *Moore v. District Court,* 184 Colo. 63, 518 P.2d 948 (1974).

■ Article VI, § 9(1) of the Colorado Constitution provides, as pertinent here, that district courts "shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein." Although this provision confers broad jurisdiction on district courts, that jurisdiction may be limited by the General Assem-

bly. *State v. Borquez,* 751 P.2d 639 (Colo. 1988).

■ The Workers' Compensation Act, enacted by the General Assembly under the state's police power, *see School District No. 1 v. Industrial Commission,* 66 Colo. 580, 185 P. 348 (1919), gives ALJs, rather than district courts, original jurisdiction to hear matters arising under the Act. *See* § 8–43–201 ("[t]he director and administrative law judges employed by the division of administrative hearings in the department of personnel shall have original jurisdiction to hear and decide all matters arising under [this Act]").

In *Colorado Compensation Insurance Authority v. Baker,* 955 P.2d 86 (Colo.App. 1998), a division of this court concluded that, in light of the General Assembly's decision to make proceedings under the Act the exclusive remedy for work-related injuries, § 8–43–201 precluded the district court from addressing the Colorado Compensation Insurance Authority's civil complaint seeking repayment of benefits from workers' compensation claimants. *See also Packaging Corp. v. Roberts,* 169 Colo. 316, 320, 455 P.2d 652, 654 (1969)(observing that, although Colo. Const. art. VI, § 9 vests district courts with original jurisdiction in civil cases, "[i]f the plaintiff was an employee at the time the injury occurred, the Industrial Commission would have exclusive jurisdiction of the matter").

Although these cases do not directly address whether § 8–43–201 conflicts with article VI, § 9, we note that the supreme court rejected a similar constitutional challenge in *Curtiss v. GSX Corp.,* 774 P.2d 873 (Colo. 1989). In that case, the claimant argued that the Workers' Compensation Act violated the right of access to the courts set forth in Colo. Const. art. II, § 6, which states that courts of justice shall be open to every person and a speedy remedy afforded for every injury. The supreme court disagreed, reasoning that, because the claimant had no right to sue his statutory employer in tort, his rights under article II, § 6 were not violated.

■ We similarly conclude that § 8–43–201 does not violate article VI, § 9 of the Colorado Constitution.

Contrary to employer's contention, workers' compensation cases are not ordinary civil disputes between "private parties litigating private rights" that must be resolved in the courts. Rather, the parties in workers' compensation proceedings have expressly surrendered common law rights, remedies, and proceedings in exchange for the benefits of the Act—namely, compensation to the employee for job-related injuries and immunity for the employer from common law claims. *See Kandt v. Evans,* 645 P.2d 1300 (Colo.1982); *see also Frohlick Crane Service, Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891 (1973); *Colorado Compensation Insurance Authority v. Baker, supra.*

We are also unpersuaded by employer's related argument that ALJs should not be able to decide workers' compensation cases because, unlike district court judges, they are not subject to popular vote in order to be retained in office. Any right the parties may have to have their disputes considered by judges subject to popular vote is protected by the provisions of the Act authorizing judicial review by direct appeal to this court. *See* § 8–43–307, C.R.S.2001; *Roper v. Industrial Commission,* 93 Colo. 250, 25 P.2d 725 (1933); *cf. Allison v. Industrial Claim Appeals Office,* 884 P.2d 1113 (Colo.1994)(former statute authorizing review only by application for writ of certiorari was not sufficient to protect claimant's right of access to the courts).

In sum, employer has not overcome the presumption that § 8–43–201 is valid and constitutional. Therefore, the ALJ's order will not be set aside on this basis.

## II.

In related arguments, employer contends that the ALJ erred in concluding that the DIME rating had not been overcome. Specifically, employer argues that (1) the DIME impairment rating could not be sustained because, contrary to the ALJ's finding, claimant was not at MMI when the rating was assigned; and (2) the record does not sup-

port the ALJ's determination that claimant's refusal to undergo further treatment was reasonable. We are not persuaded.

A party disputing a DIME permanent medical impairment determination must overcome that determination by clear and convincing evidence. Section 8–42–107(8)(c).

■ Whether that burden of proof has been satisfied is a question of fact for the ALJ. On review, the ALJ's findings must be upheld if they are supported by substantial evidence. Further, we must view the evidence as a whole and in the light most favorable to the prevailing party and must defer to the ALJ's credibility determinations and resolution of conflicts in the evidence. *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411 (Colo.App.1995).

### A.

We reject employer's contention that the ALJ's decision regarding claimant's MMI status was not supported by substantial evidence.

■ MMI is defined as that point in time when any medically determinable physical or medical impairment as a result of injury has become stable and when no further treatment is reasonably expected to improve the condition. Section 8–40–201(11.5), C.R.S. 2001; *Donald B. Murphy Contractors, Inc. v. Industrial Claim Appeals Office*, 916 P.2d 611 (Colo.App.1995).

■ If there are any ambiguities in a DIME physician's report regarding whether a claimant is at MMI, resolution of such ambiguities presents a question of fact for the ALJ to resolve. *Magnetic Engineering, Inc. v. Industrial Claim Appeals Office*, 5 P.3d 385 (Colo.App.2000).

■ Evaluation for permanent disability cannot precede the determination that the claimant has reached MMI. *See Dziewior v. Michigan General Corp.*, 672 P.2d 1026 (Colo.App.1983)(permanent disability generally cannot be determined until physicians treating claimant for work-related injuries advise that they can do nothing further for claimant).

■ However, as the ALJ implicitly recognized here in interpreting certain arguably inconsistent portions of the DIME physician's report, a claimant is at MMI as a matter of law if he or she refuses to submit to the only treatment currently proposed to improve his or her condition. *See Dziewior v. Michigan General Corp., supra.* Thus, if there was evidence to establish that claimant refused to submit to the treatment proposed to improve his condition, the DIME physician could properly assign a permanent disability rating.

■ The record does not support employer's contention that the finding of MMI was premature because claimant had not indicated that he would be opposed to physical therapy. Although employer relies on a statement by the DIME physician that further rehabilitation with physical therapy might result in improved range of motion and be worth a trial, the DIME physician stated in the immediately following sentences: "However, due to the underlying pathology, it is doubtful that this would result in long-term sustainable benefits.... Ultimately, surgery may be the only answer to reducing [claimant's] pain to a more tolerable level on a long-term basis." Moreover, there is nothing in the record to indicate that claimant was in fact offered additional physical therapy but refused to pursue it; and claimant's treating physician placed him at MMI based specifically on his refusal to undergo further surgery.

Thus, we perceive no error in the ALJ's findings or conclusions regarding the MMI issue.

### B.

Nor do we agree that the ALJ was required to find the proposed surgery posed unusual risks before she could find that claimant's refusal of the surgery was reasonable.

Section 8–43–404(3), C.R.S.2001, provides that a claimant's benefits may be reduced or suspended if the claimant "refuses to submit to such medical or surgical treatment ... as is reasonably essential to promote recovery."

■ The reasonableness of a claimant's refusal to submit to treatment is a question

of fact for the ALJ. The ALJ's determination is not subject to revision on review absent an abuse of discretion. *See Hays v. Industrial Commission,* 138 Colo. 334, 333 P.2d 617 (1958).

■ Claimant testified that, in addition to the two surgeries on his left shoulder, he had previously undergone four other surgeries for work-related injuries, none of which had been successful. He did not want any further surgery on his shoulder because, based on his experience, he did not believe more surgery would provide relief. Employer's expert witness testified that the proposed procedure would involve the normal risks of surgery-infection, failure to heal, postoperative pain, and risk of anesthesia. The witness did not dispute that there was no guarantee that the surgery would be successful. He also conceded that, if surgery was not going to be performed, there was no need for the proposed injection.

■ This evidence was sufficient to support the ALJ's determination that claimant's refusal to submit to further surgery was reasonable.

Contrary to employer's contention, claimant did not have to establish that the surgery posed unusual risks before he could be justified in refusing it. Even where surgery poses only the "usual" risks, the employer still must show that the surgery is calculated to effect a cure before § 8–43–404(3) may be invoked to reduce or suspend benefits. *See Cain v. Industrial Commission,* 136 Colo. 227, 315 P.2d 823 (1957). It was within the ALJ's discretion to conclude that the latter showing had not been made.

Because the record supports the ALJ's refusal to reduce claimant's permanent disability benefits under § 8–43–404(3), the remand requested by employer to reconsider the impairment issue is unnecessary.

The order is affirmed.

Judge MARQUEZ and Judge TAUBMAN concur.