COLORADO COURT OF APPEALS **2017COA71**

Court of Appeals No. 16CA1085
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-978-703-01

Michael Sanchez,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, Denver Water, and
Travelers Indemnity Company,

Respondents.

ORDER AFFIRMED

Division IV
Opinion by JUDGE ASHBY
Hawthorne and Nieto*, JJ., concur

Announced May 18, 2017

Law Office of Chris Forsyth, LLC, Chris Forsyth, Denver, Colorado, for
Petitioner

Cynthia H. Coffman, Attorney General, Emmy A. Langley, Assistant Attorney
General, Denver, Colorado, for Respondent Industrial Claim Appeals Office

Ray Lego & Associates, Jonathan S. Robbins, Gregory W. Plank, Greenwood
Village, Colorado, for Respondent Denver Water

No Appearance for Respondent Travelers Indemnity Company

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     The claimant in this case challenges the constitutionality of portions of the Workers' Compensation Act of Colorado, sections 8-40-101 to -55-105, C.R.S. 2016 (Act).  Claimant, Michael Sanchez, contends that using administrative law judges (ALJs) and the Industrial Claim Appeals Office (Panel), from the state's executive branch, violates equal protection and the separation of powers.  He also challenges the constitutionality of section 8-43-404(5)(a)(II)(A), C.R.S. 2016, which exempts governmental entities from providing an injured worker with a list of four physicians from whom the worker may seek medical care for his or her injury.  Because we reject these constitutional arguments, and are not persuaded by claimant's remaining contentions, we affirm the Panel's decision denying and dismissing claimant's request for temporary disability benefits.

## I.  Background

¶ 2     Claimant works for Denver Water in the leak detection department.  On March 25, 2015, he sustained a back injury lifting a hydraulic unit from his truck.  He felt immediate back pain, reported his injury, and was sent to an in-house clinic for treatment and evaluation.  Claimant described his injury as "pain to right low

back," but a pain diagram he completed that day illustrated aching and stabbing pain mid-way between his armpit and hip. Dr. Hugh Macaulay, the part-time physician at the clinic, diagnosed claimant with an injury to the "upper back (thoracic area) on the right side of the body."

¶ 3 A week later, Dr. Macaulay reported that claimant was "doing markedly better than on his last visit." Two and half weeks later, claimant reported that his "pain is much less" and rated it "as 1-1.5/10." By May 13, 2015, claimant had been released to full duty with no restrictions. Dr. Macaulay placed claimant at maximum medical improvement (MMI) for his mid-back injury on June 3, 2015.

¶ 4 However, after he was placed at MMI, claimant complained of "significantly more discomfort in his mid-back area." An MRI of the thoracic spine was "benign." He also told his physical therapist a day earlier that he had "excruciating" lower back pain.

¶ 5 Claimant returned for a follow-up visit with Dr. Macaulay in July 2015 complaining of low back pain. He told Dr. Macaulay that another physician had diagnosed "lumbar strain, thoracic strain and depression." But both Dr. Macaulay and a specialist concluded

2

that claimant's lumbar strain was not work-related. Based on an MRI study of claimant's low back, Dr. Macaulay opined that claimant's low back pain was associated with "normal age-related" degenerative changes.

¶ 6 Claimant sought temporary partial disability (TPD) benefits from the date of his injury and temporary total disability (TTD) benefits from June 2015 when his low back pain flared. But an ALJ rejected claimant's request for benefits, finding that his low back pain was unrelated to his work injury. The ALJ also found that because claimant had continued working, he had not suffered a wage loss and therefore was not entitled to either TPD or TTD benefits. On that basis, the ALJ denied and dismissed claimant's request for both TTD and TPD benefits. The Panel affirmed the ALJ's rulings, but it remanded the case to the ALJ to address whether claimant was entitled to a change in his physician. Claimant now appeals.

## II. Issues Raised are Final for Purposes of This Appeal

¶ 7 We begin by addressing Denver Water's assertion that claimant's appeal should be dismissed for lack of finality. Denver Water argues that because the Panel remanded part of the ALJ's

order for further consideration, the order was not final for appeal and the appeal should be dismissed.  We disagree.

¶ 8      Section 8-43-301(2), C.R.S. 2016, permits "[a]ny party dissatisfied with an order that requires any party to pay a penalty or benefits or denies a claimant any benefit or penalty [to] file a petition to review with the division."  Thus, to be final and appealable, an ALJ's order "must grant or deny benefits or penalties."  *Flint Energy Servs., Inc. v. Indus. Claim Appeals Office*, 194 P.3d 448, 449-50 (Colo. App. 2008); *accord Ortiz v. Indus. Claim Appeals Office*, 81 P.3d 1110, 1111 (Colo. App. 2003).

¶ 9      Because the Panel affirmed the ALJ's decision denying claimant's request for TPD and TTD benefits, that portion of the ALJ's order is final and appealable.  We therefore turn to the merits of claimant's appeal.  We first address claimant's various constitutional arguments, and then we consider his other claims for relief.

### III.  Constitutional Challenges

### A.  Separation of Powers

¶ 10     Claimant argues that the separation of powers doctrine is violated "by having workers' compensation cases heard in the

executive branch." He contends that "workers' compensation cases involve private rights that are properly heard by judicial branch judges." We are not persuaded.

¶ 11 "Article III of the Colorado Constitution prohibits one branch of government from exercising powers that the constitution vests in another branch." *Dee Enters. v. Indus. Claim Appeals Office*, 89 P.3d 430, 433 (Colo. App. 2003). The "separation of powers doctrine does not require a complete division of authority among the three branches, however, and the powers exercised by different branches of government necessarily overlap." *Id. Dee Enterprises* held that the statutory scheme for deciding workers' compensation cases does not violate the separation of powers doctrine and that "review by this court of the Panel's final orders for errors of law and abuse of discretion is sufficient to protect the proper exercise of judicial function." *Id.* at 437.

¶ 12 Claimant nevertheless argues that the United States Supreme Court cases on which *Dee Enterprises* relied, *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568 (1985), and *Crowell v. Benson*, 285 U.S. 22 (1932), directly contradict the principles espoused in *Dee Enterprises*. But we conclude that *Dee Enterprises*

5

thoroughly and properly analyzed this issue and faithfully followed the precedent of *Thomas* and *Crowell*.

## B. Equal Protection

¶ 13    The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Although the Colorado Constitution does not contain an identical provision, "it is well-established that a like guarantee exists within the constitution's due process clause, Colo. Const. art. II, sec. 25, and that its substantive application is the same insofar as equal protection analysis is concerned." *Qwest Corp. v. Colo. Div. of Prop. Taxation*, 2013 CO 39, ¶ 22 (quoting *Lujan v. Colo. State Bd. of Educ.*, 649 P.2d 1005, 1014 (Colo. 1982)), *abrogated on other grounds by Warne v. Hall*, 2016 CO 50.

¶ 14    We address, and reject, each of claimant's equal protection challenges in turn.

## 1. Standard of Review

¶ 15    Claimant first asserts that his equal protection challenges should be analyzed under a strict scrutiny standard, rather than under a rational basis review.

> Under equal protection law, judicial scrutiny of a statute varies according to the type of classification involved and the nature of the right affected. The rational basis standard of review applies when a legislative classification does not involve a suspect class or abridgement of a fundamental right triggering strict scrutiny and also when the classification does not trigger an intermediate standard of review.

*Culver v. Ace Elec.*, 971 P.2d 641, 645-46 (Colo. 1999) (citations omitted). "A legislative enactment which infringes on a fundamental right or which burdens a suspect class is constitutionally permissible only if it is '*necessary* to promote a *compelling* state interest,' and does so in the least restrictive manner possible." *Evans v. Romer*, 882 P.2d 1335, 1341 (Colo. 1994) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972)), *aff'd*, 517 U.S. 620 (1996). In contrast, "[u]nder the rational basis standard of review, a statutory classification will stand if it bears a rational relationship to legitimate governmental objectives and is not unreasonable, arbitrary, or capricious." *HealthONE v. Rodriguez*, 50 P.3d 879, 893 (Colo. 2002). Claimant asserts that because his fundamental right to a fair hearing is threatened by using non-judicially selected and retained ALJs and Panel

7

members, his claim should be analyzed under the strict scrutiny standard.

¶ 16    But, "[n]ot all restrictions on fundamental rights are analyzed under a strict scrutiny standard of review," *Rocky Mountain Gun Owners v. Hickenlooper*, 2016 COA 45M, ¶ 19, and, as *Culver* held, "[r]eceipt of workers' compensation benefits is not a fundamental right." *Culver*, 971 P.2d at 646.  Indeed, we have found no case, and claimant has not cited any to us, that analyzes workers' compensation hearings under a strict scrutiny standard.

¶ 17    Cases cited by claimant do not persuade us that strict scrutiny must be applied here.  At least two of the cases do not address the fundamental right to a fair hearing and therefore are inapposite.  *See M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (state could not terminate mother's fundamental right to parent without a hearing on grounds that mother could not afford court costs); *Evans*, 882 P.2d at 1343-44 (Amendment 2 was too broad and "not narrowly tailored" to constitutionally accomplish its stated goals of protecting the rights to freely practice religion, "personal privacy," and "familial privacy").

¶ 18    A third case expressly holds that a pre-termination evidentiary hearing is *not* required — and thus no fundamental right to a hearing is violated — by the government using administrative procedures to determine continued social security benefits.  *See Mathews v. Eldridge*, 424 U.S. 319, 340-42 (1976) (a claimant seeking continued social security disability benefits is not entitled to a pre-termination evidentiary hearing because social security disability benefits are "not based upon financial need" and "other forms of government assistance will become available where the termination of disability benefits places a worker or his family below the subsistence level").

¶ 19    Accepting claimant's argument that strict scrutiny analysis applies could also lead to the absurd result that the standard would apply whenever a litigant is dealt an unfavorable decision and then asserts the hearing was unfair because it was conducted by an allegedly unqualified or inadequately vetted judge.

¶ 20    Colorado courts have repeatedly held that workers' compensation claimants are not a suspect class and that workers' compensation benefits are not a fundamental right.  *See Dillard v. Indus. Claim Appeals Office*, 134 P.3d 407, 413 (Colo. 2006);

*Simpson v. Indus. Claim Appeals Office*, 219 P.3d 354, 364 (Colo. App. 2009), *rev'd in part and vacated in part on other grounds sub nom. Benchmark/Elite, Inc. v. Simpson*, 232 P.3d 777, 778 (Colo. 2010); *Kroupa v. Indus. Claim Appeals Office*, 53 P.3d 1192, 1197 (Colo. App. 2002) ("[R]eceiving workers' compensation benefits is not a fundamental right."). The rational basis test therefore applies to equal protection challenges in the workers' compensation context, and claimant's constitutional challenge should be assessed under that standard. *See Mathews*, 424 U.S. at 349; *Dillard*, 134 P.3d at 413; *Kroupa*, 53 P.3d at 1197.

¶ 21    Under the rational basis test, "a statutory classification is presumed constitutional and does not violate equal protection unless it is proven beyond a reasonable doubt that the classification does not bear a rational relationship to a legitimate legislative purpose." *Pace Membership Warehouse v. Axelson*, 938 P.2d 504, 506 (Colo. 1997). "[T]he burden is on claimant, as the challenging party, to prove the statute is unconstitutional beyond a reasonable doubt." *Pepper v. Indus. Claim Appeals Office*, 131 P.3d 1137, 1139 (Colo. App. 2005), *aff'd on other grounds sub nom. City of Florence v. Pepper*, 145 P.3d 654 (Colo. 2006).

¶ 22     In applying rational basis review, "we do not decide whether the legislature has chosen the best route to accomplish its objectives." *Dean v. People*, 2016 CO 14, ¶ 13.  Instead, "[o]ur inquiry is limited to whether the scheme as constituted furthers a legitimate state purpose in a rational manner."  *Id.*

### 2.  Use of ALJs and Panel Members Who are Not Subject to Selection by the Governor or Retention by the Voters Does Not Violate Equal Protection

¶ 23     Claimant contends that the structure of the Division of Workers' Compensation — particularly its use of ALJs and the Panel to resolve disputes — violates his and other workers' compensation litigants' rights to equal protection.  Claimant challenges the constitutionality of the selection process for Panel members and the use of ALJs by asserting identical arguments.  Because these arguments overlap, we address them together.

¶ 24     Claimant contends that the state's process for choosing and retaining judicial officers is "carefully crafted to obtain fair and impartial judges."  He suggests that he and other workers' compensation litigants are forced to have their claims heard by a potentially partial ALJ or tribunal, because ALJs and Panel members are "appointed by the executive director of the department

11

of labor and employment[,] can serve forever," and have not undergone the careful vetting of judges appointed under article VI.[1] This dichotomy between litigating civil suits and workers' compensation claims, he argues, violates his and other workers' compensation litigants' right to equal protection. We disagree.

¶ 25    Claimant bears the burden of showing "that the classification lacks a legitimate governmental purpose and, without a rational basis, arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated." *Dillard*, 134 P.3d at 413. He identifies the class as all civil litigants. But, as several divisions of this court have noted, workers' compensation litigants should not be lumped together with civil litigants generally because

> workers' compensation cases are not ordinary civil disputes between "private parties litigating private rights" that must be resolved in the courts. Rather, the parties in workers' compensation proceedings have expressly surrendered common law rights, remedies, and proceedings in exchange for the benefits of the Act — namely, compensation to the employee for job-related injuries and immunity for the employer from common law claims.

---

[1] Judicial power in the State of Colorado is vested in the judicial branch by article VI of the Colorado Constitution.

*MGM Supply Co. v. Indus. Claim Appeals Office*, 62 P.3d 1001, 1004 (Colo. App. 2002); *see also Aviado v. Indus. Claim Appeals Office*, 228 P.3d 177, 180-81 (Colo. App. 2009) ("[T]he General Assembly essentially has determined that workers' compensation cases are not civil cases that must be heard in a judicial court."). We therefore conclude that the class should be defined more narrowly as comprising all workers' compensation litigants, because parties to workers' compensation actions are subject to different rules and a different statutory scheme than other litigants. *See MGM Supply*, 62 P.3d at 1004 (observing differences between litigants in "ordinary civil disputes" and litigants in workers' compensation proceedings). Classified in this manner, it is clear that all workers' compensation litigants, including claimant, are treated equally. Also, using ALJs and the Panel — both of whom fall under Colorado's executive branch — to hear workers' compensation claims advances the Act's goals of quickly and efficiently resolving claims. § 8-40-102(1), C.R.S. 2016; *see Simpson*, 219 P.3d at 363; *MGM Supply*, 62 P.3d at 1004. We conclude that advancing these legitimate governmental goals is a sufficient rational basis for

employing executive branch ALJs and the Panel to decide workers' compensation cases.

¶ 26     Claimant's arguments here mirror those addressed and rejected by other divisions of this court in two prior decisions: (1) *Youngs v. Industrial Claim Appeals Office*, (Colo. App. No. 08CA2209, Nov. 19, 2009) (not published pursuant to C.A.R. 35(f)) (*Youngs I*);[2] and (2) *Youngs v. Industrial Claim Appeals Office*, 2012 COA 85M (Colo. App. 2012) (*Youngs II*).  In *Youngs I,* a claimant argued that his fundamental right to a fair hearing was jeopardized by the Division of Workers' Compensation's use of executive-appointed ALJs rather than judicial branch officers.  In *Youngs II*, the same claimant argued that his rights to equal protection were violated because ALJs and Panel members were "not appointed by the Governor of Colorado for a term of years . . . and . . . not subject to impeachment."  *Youngs II*, ¶ 48.  The division in *Youngs II* relied on the prior division's decision as to the equal protection challenge on the basis of the doctrines of law of the case and issue preclusion.  Further, relying on prior decisions of this court, *Youngs I* and *II* held

_____

[2] Although the policy of this court forbids citation by parties to unpublished opinions, we cite to *Youngs I* to explain the procedural history and to place the decision in *Youngs II* in context.

that the claimant's constitutional rights were not violated. *Youngs II,* ¶ 61. *Youngs I* and *II* show that, contrary to claimant's conclusory assertion, the arguments he raises here are not "separate and distinct from arguments raised in prior cases."

¶ 27 The prior decisions on which *Youngs I* and *II* relied apply equally here. And, they provide precedential grounds for rejecting the argument claimant now makes. *See Aviado*, 228 P.3d at 180-81 (because there is no fundamental right to recover damages in district court, workers' compensation claimants are not deprived of a "fundamental constitutional right to a hearing in district court"); *Dee Enters.,* 89 P.3d at 434 (use of executive branch ALJs and the Panel does not prevent "the judicial branch of government from exercising power that is essential to its proper functioning"); *MGM Supply*, 62 P.3d at 1004.

¶ 28 Claimant denounces these prior opinions as "wrongly decided" and demands that they "be overturned." Yet, he fails to articulate any sound legal bases for doing so. We conclude that *Aviado, Dee Enterprises,* and *MGM Supply* are well reasoned, and we find no basis to disagree with their holdings. The same basic complaint asserted in those three cases is argued here — that depriving

workers' compensation claimants and respondents of access to judicial branch hearings violates their constitutional rights. No case cited by claimant, or any we have found, has held that administrative hearings deprive workers' compensation litigants of a right to a fair hearing. To the contrary, the workers' compensation scheme of dispute resolution has been universally upheld.

¶ 29 Moreover, workers' compensation litigants have access to judicial review. Like the appellants in *Aviado*, *Dee Enterprises*, *MGM Supply*, and *Youngs I* and *II*, claimant had a right — which he exercised — to have his claim heard by a judicial branch appellate court. "The General Assembly has explicitly made the exercise of the powers conferred upon ALJs and the Panel subordinate to the judiciary by providing for a review as of right by this court for errors of law and findings of fact that are unsupported by the evidence." *Dee Enters.*, 89 P.3d at 434. Thus, "[a]ny right [claimant] may have to have [his] disputes considered by judges subject to popular vote is protected by the provisions of the Act authorizing judicial review by direct appeal to this court." *MGM Supply*, 62 P.3d at 1004.

¶ 30    Accordingly, we reject claimant's contention that his right to equal protection was violated because his claim was heard by an executive branch ALJ and the Panel.

### 3. The Industrial Claim Appeals Office's Presence as a Party and Representation by the Attorney General's Office Do Not Violate Equal Protection

¶ 31    Claimant next challenges the Panel's dual roles as a decision-maker and as a named litigant if a case is subsequently appealed to this court. He contends that the Panel's fluid roles can improperly lead it to "magically transform back into an appellate tribunal," a "scenario [that] reeks of impropriety." He claims further that workers' compensation claimants are the only litigants subjected to this dichotomy, which wrongfully deprives him and other workers' compensation litigants of equal protection. Again, we are not persuaded.

¶ 32    The Act permits "[a]ny person in interest, including Pinnacol Assurance, being dissatisfied with any final order of the division, [to] commence an action in the court of appeals *against the industrial claim appeals office as defendant* to modify or vacate any such order on the grounds set forth in section 8-43-308." § 8-43-307(1), C.R.S. 2016 (emphasis added). Thus, claimant was

following the legislature's mandate to name the Panel as a defendant when he appealed to this court.

¶ 33     First, workers' compensation claimants are not the only litigants who encounter the Panel as both decision-maker and defendant.  The Panel also appears as a defendant in unemployment cases brought before this court.  *See* § 8-74-107, C.R.S. 2016.

> The threshold question in an equal protection challenge is whether the legislation results in dissimilar treatment of similarly situated individuals.  To violate equal protection provisions, the classification must arbitrarily single out a group of persons for disparate treatment from that of other persons who are similarly situated.

*Pepper*, 131 P.3d at 1140.

¶ 34     Claimant asserts that workers' compensation litigants are treated unlike any other litigant and attempts to distinguish workers' compensation litigants from unemployment litigants.  But we perceive no fundamental distinction between these groups for equal protection purposes.

¶ 35     And, contrary to claimant's underlying assumption, this exact dichotomy exists in the judicial branch, as well.  Parties appearing

before article VI courts who are dissatisfied with an order may seek immediate relief from the order in the supreme court under C.A.R. 21, and may name the lower court or judge as a party. *See Colo. State Bd. of Med. Exam'rs v. Colo. Court of Appeals*, 920 P.2d 807, 814 (Colo. 1996) (holding under C.A.R. 21 that the court of appeals exceeded its jurisdiction in issuing stay). In such actions, the district court is generally represented by the Attorney General's Office. *See, e.g., Pearson v. Dist. Court*, 924 P.2d 512, 517 (Colo. 1996) (ordering trial court to vacate its orders for mediation); *People v. Dist. Court*, 894 P.2d 739, 746 (Colo. 1995) (finding respondent court erred by suppressing evidence obtained through discovery in the prior civil proceeding). In fact, if a court or judge is named in a C.A.R. 21 petition, the implication for conflicts could be more serious than the types of conflicts claimant fears; unlike workers' compensation or unemployment cases that name the Panel generally, a C.A.R. 21 petition that names an individual judge is likely to be returned to that same judge to preside over subsequent proceedings. *See Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902, 908 (Colo. 1992) (holding that judge exceeded his jurisdiction

when he imposed sanctions against party and prohibited enforcement of the sanction).

¶ 36    Still, even assuming there is disparate treatment of workers' compensation litigants in requiring them to name the Panel as a defendant in an appeal, we conclude such a requirement does not violate equal protection. Requiring the Panel to be added as a party, and permitting the Attorney General's Office to represent the Panel on appeal, is not arbitrary. The entire Act is designed to "provide for the quick and efficient delivery of benefits to injured claimants at a reasonable cost to employers." *Dworkin, Chambers & Williams, P.C. v. Provo*, 81 P.3d 1053, 1057 (Colo. 2003). The requirement that the Panel be named as a party to any appeal serves the Act's legitimate and stated purpose of ensuring the thorough and expeditious review and, as necessary, enforcement of ALJ and Panel orders under the Act. Nevertheless, claimant insists that workers' compensation litigants are denied their right to a fair hearing because they must appear before Panel members who are biased because of their dual status as arbiters of claims and also as parties in any appeal of those claims. He correctly asserts that the Code of Judicial Conduct requires a judge to disqualify himself or

herself if he or she becomes a party to the proceeding, and that another division of this court has held that the Code applies to ALJs and Panel members. *See* C.J.C. 2.11; *Kilpatrick v. Indus. Claim Appeals Office*, 2015 COA 30, ¶ 29 ("The C.J.C. thus unambiguously and expressly applies to PALJs, ALJs, and Panel members, contrary to claimant's assertion."). The Panel, however, is not in the same position as those individual judges in the cases on which claimant relies. The Panel is named as a collective body and its members never appear in an individual capacity. We detect neither actual partiality nor the appearance of partiality in this arrangement.

¶ 37 A review of the cases cited by claimant illustrates this distinction. Claimant cites to *Venard v. Department of Corrections*, 72 P.3d 446 (Colo. App. 2003), for the proposition that judges may not become "advocates in a matter where they serve as judges." In *Venard*, however, unlike this case, the same individual served on a decision-making board hearing a case brought by a plaintiff's counsel and then also represented the state against the same plaintiff's counsel in an unrelated matter. A division of this court disqualified the board member from deciding cases involving the

plaintiff's attorney because of the undeniable appearance of impropriety.  *Id.* at 450.

¶ 38    In contrast, Panel members who ruled on claimant's case do *not* appear as individual defendants and the Panel is represented on appeal by counsel from the Attorney General's Office.  So, individual Panel members are not in the same adversarial posture as the board member described in *Venard.*

¶ 39    Claimant also relies on *People v. Martinez*, 185 Colo. 187, 523 P.2d 120 (1974).  In that case the court found that, after the prosecutor failed to appear for a hearing, the trial judge

> assumed the role of the district attorney.  The court not only moved sua sponte for the admission of the transcript of the preliminary hearing into evidence, but called witnesses for the People, examined them and cross-examined defense witnesses.  He made sua sponte objections to defense counsel's questions and ruled on objections made to his own questions — many leading ones.

*Id.* at 188-89, 523 P.2d at 120-21.  These actions, the supreme court determined, demonstrated that the trial judge was not impartial but instead acted as "an advocate and not a judge."  *Id.* at 189, 523 P.2d at 121.  The Panel in this case did not take any similar actions; claimant named the Panel as a defendant as

required by section 8-43-307, and the Attorney General's Office filed a brief on the Panel's behalf as anticipated by that statute. Claimant cannot establish that the individual Panel members have provided evidence or testimony in his case, or have personally advocated the Panel's position against his interests. The only individuals who have presented the Panel's position are members of the Attorney General's Office who have no role whatsoever in the Panel's decision-making functions.

¶ 40    There simply has not been a showing, as there was in *Martinez* and *Venard*, that an individual Panel member has acted with any partiality or appearance of impropriety. For these reasons, we conclude that claimant has not established an equal protection violation due to the Act's requirement that the Panel be named as a party. *Pepper*, 131 P.3d at 1140.

¶ 41    To the extent claimant asserts any impropriety or equal protection violation from the Attorney General's Office representing the Panel, the argument is undeveloped. We therefore decline to address it. *See Meza v. Indus. Claim Appeals Office*, 2013 COA 71, ¶ 38; *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address "underdeveloped arguments").

### 4. Section 8-43-404(5)(a)(II)(A) Does Not Improperly Single Out Governmental Workers and Therefore Does Not Violate Equal Protection

¶ 42    Claimant next challenges on equal protection grounds the statute that obligates an employer to furnish an injured worker with options for medical care. Section 8-43-404(5)(a)(I)(A) requires an employer to "provide a list of at least four physicians or four corporate medical providers or at least two physicians and two corporate medical providers or a combination thereof where available, in the first instance, from which list an injured employee may select the physician who attends the injured employee." A later subsection of the statute carves out an exception for governmental entities and health care providers. It provides as follows:

> If the employer is a health care provider or a governmental entity that currently has its own occupational health care provider system, the employer may designate health care providers from within its own system and is not required to provide an alternative physician or corporate medical provider from outside its own system.

§ 8-43-404(5)(a)(II)(A).  Claimant asserts that this exemption deprives governmental workers of the right to select a physician in violation of equal protection.  We disagree.

¶ 43     "To successfully challenge a statute on equal protection grounds, 'the party asserting the statute's unconstitutionality must show that the classification lacks a legitimate governmental purpose and, without a rational basis, *arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated.'"  *Zerba v. Dillon Cos.*, 2012 COA 78, ¶ 11 (emphasis added) (quoting *Dillard*, 134 P.3d at 413).  By the plain terms of the statute, governmental workers are not the only group denied a list of four physicians.  And if we determine that a rational basis exists for excluding employees of governmental entities and health care providers that have their own occupational health care provider system from the four-physician requirement, these groups are necessarily not "*arbitrarily* single[d] out . . . for disparate treatment" from other injured workers.  *Zerba*, ¶ 11 (emphasis added) (quoting *Dillard*, 134 P.3d at 413).

¶ 44     We conclude that a rational basis does exist for excluding employees of governmental entities and health care providers from

the four-physician referral requirement. Both health care providers and governmental entities are more likely to have the expertise and means to establish their own provider systems than other employers. The legislature having determined that only these two types of entities qualify for the exclusion is therefore not arbitrary or irrational. And requiring employees of these entities to use providers within those systems is consistent with the Act's goals to minimize costs while efficiently providing care and compensation to injured workers. The fact that the statutory classification may impact only employees of these two types of entities does not render the classification unconstitutional. *See Dillard*, 134 P.3d at 414. Claimant therefore cannot establish an equal protection violation due to the physician referral exclusion.

IV. Non-Constitutional Challenges to Panel's Order

¶ 45    Claimant asserts three non-constitutional arguments: (1) the exemption from providing a list of four possible physicians did not apply because Denver Water did not meet the requirements of section 8-43-404(5)(a)(II)(A); (2) substantial evidence does not support the ALJ's factual findings; and (3) the ALJ made numerous

26

evidentiary errors. We are not persuaded to set aside the Panel's order by any of these arguments.

### A. Denver Water Complies with Statutory and Regulatory Requirements for Having Its Own Occupational Health Care Provider

¶ 46 Claimant argues that Denver Water's clinic does not meet section 8-43-404(5)(a)(II)(A)'s criteria for an "occupational health care provider system" because it does not have a full-time physician at the clinic. Specifically, claimant contends that because Dr. Macaulay is only present at the clinic two days per week and does not supervise the clinic's operations, Denver Water's clinic does not comply with the statutory and regulatory requirements for an on-site health care facility. So, he maintains, Denver Water was not statutorily exempt; should have provided him with a list of four potential physicians; and, when it failed to do so, violated section 8-43-404(5)(a)(I)(A). We are not persuaded.

¶ 47 Section 8-43-404(5)(a)(II)(B) specifically states that in order for a governmental entity or health care provider to be exempt under the Act from listing four physicians, the on-site health care facility must meet "all applicable state requirements to provide health care services on the employer's premises." *Id.* The regulation governing

27

this provision requires "the on-site facility [to] be under the supervision and control of a physician, and a physician must be on the premises *or reasonably available*."  Dep't of Labor & Emp't Rule 8-1(C)(1), 7 Code Colo. Regs. 1101-3 (emphasis added).  We conclude that Denver Water's clinic adequately complies with these requirements.

¶ 48    The regulation does not require that a physician be on the premises at all times.  Rather, so long as a physician is "reasonably available" the statutory mandate is met.  Dr. Macaulay works at the clinic twice per week and can be reached at other times, as needed.  This meets the statutory requirements.

¶ 49    Dr. Macaulay does not have administrative authority over the clinic's nursing staff or other personnel.  But, Dr. Macaulay emphasized that he demands medical independence and is available to the clinic nurses to answer their medical questions.  In other words, Dr. Macaulay exercises independent medical judgment and provides medical supervision at the clinic even though he does not provide any administrative supervision over the nursing staff such as approving vacation time, hiring staff, or making other personnel decisions.

¶ 50 Claimant asserts that this is fatal to Denver Water's clinic qualifying as an on-site health care facility. But the Panel interpreted Rule 8-1 as mandating that a physician be "responsible for making the necessary medical determinations and does not refer to the administrative supervision of employees such as scheduling time off and personnel matters." While we are not bound by the Panel's interpretation of the statute, and our review is de novo, we give "considerable weight" to the Panel's interpretation, *Zerba*, ¶ 35, and do not set it aside "unless plainly erroneous or inconsistent with such regulations." *Id.* at ¶ 37 (quoting *Jiminez v. Indus. Claim Appeals Office*, 51 P.3d 1090, 1093 (Colo. App. 2002)); *see also Anderson v. Longmont Toyota, Inc.*, 102 P.3d 323, 326 (Colo. 2004). The Panel's interpretation will therefore be set aside only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo. App. 1998). We conclude that the Panel's interpretation is reasonable and consistent with the legislative intent. We therefore adopt it and apply it.

¶ 51 Nor are we persuaded by claimant's argument that the clinic does not comply with the statute because only one physician at a

time is staffing it. Focusing on the statute's use of the plural —
"the employer may designate health care *providers*" — claimant
reasons that section 8-43-404(5)(a)(II)(A) requires every clinic to
have more than one physician on-hand and available at any given
time. (Emphasis added.) We disagree.

¶ 52 Nothing in the statute suggests that multiple physicians must
be present at a clinic. Claimant cites to no authority for his
proposed interpretation and we have found none. The statute's
plain language addresses an employer that "has its own
occupational health care provider system" — singular — and the
reference to designating "health care providers" within its own
system simply allows an exempted employer the flexibility to employ
or contract with one or more physicians. *See* § 8-43-404(5)(a)(II)(A).

¶ 53 Last, claimant argues that Denver Water effectively conceded
that Dr. Macaulay is not part of its occupational health care
provider system and waived its right to argue it had its own
occupation health care provider system. He claims this is so
because Denver Water objected when claimant's counsel questioned
claimant about his conversations with Dr. Macaulay concerning
claimant's impairment rating. As we understand claimant's

reasoning, he contends that if Denver Water considered Dr. Macaulay an employee, it could not object to his statements on hearsay grounds because the testimony would be an admission by a party opponent and therefore fall within an exception to the hearsay rule. But Denver Water's counsel objected to the questions about claimant's conversation with Dr. Macaulay because the statements were not made for purposes of a medical diagnosis. And, claimant's counsel argued only that the doctor's statements were admissible as prior inconsistent statements. Neither party laid the foundation for or characterized the statements as an admission nor argued that the court should admit them as such. So we find no basis to conclude that Denver Water made any concession or waived its right to argue that its clinic qualified as an on-site health care facility. For these reasons, we conclude that Denver Water's clinic complied with the requirements of section 8-43-404(5)(a)(II)(B) and Rule 8-1(C)(1).

## B. Substantial Evidence Supports the ALJ's Conclusion that Claimant's Low Back Injury was Not Work-Related

¶ 54    Claimant next contends that the ALJ disregarded critical evidence when he determined that claimant's low back pain was unrelated to his work injury.  We disagree.

### 1.  Governing Law and Standard of Review

¶ 55    "Proof of causation is a threshold requirement which an injured employee must establish by a preponderance of the evidence before any compensation is awarded."  *Faulkner v. Indus. Claim Appeals Office*, 12 P.3d 844, 846 (Colo. App. 2000).  The issue of causation "is generally one of fact for determination by the ALJ."  *Id.*; *see also H&H Warehouse v. Vicory*, 805 P.2d 1167, 1170 (Colo. App. 1990) ("The ALJ has great discretion in determining the facts and deciding ultimate medical issues.").

¶ 56    We must uphold the ALJ's factual determinations if the decision is supported by substantial evidence in the record.  *See* § 8-43-308, C.R.S. 2016; *Leewaye v. Indus. Claim Appeals Office*, 178 P.3d 1254, 1256 (Colo. App. 2007) ("We are bound by the factual determinations of the ALJ, if they are supported by substantial evidence in the record."); *Wal-Mart Stores, Inc. v. Indus.*

*Claims Office*, 989 P.2d 251, 252 (Colo. App. 1999) ("If substantial evidence supports the ALJ's conclusion that a claimant's condition is work-related, that determination may not be disturbed on review."). The reviewing court is bound by the ALJ's factual determinations even if the evidence was conflicting and could have supported a contrary result. It is the fact finder's sole province to weigh the evidence and resolve any contradictions. *Pacesetter Corp. v. Collett*, 33 P.3d 1230, 1234 (Colo. App. 2001); *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 415 (Colo. App. 1995) (reviewing court must defer to the ALJ's credibility determinations and resolution of conflicts in the evidence and may not substitute its judgment for that of the ALJ).

### 2. Substantial Evidence Supports the ALJ's Decision

¶ 57    Dr. Macaulay repeatedly testified that, in his opinion, claimant's low back pain was not related to his work injury. Even though he acknowledged that other doctors had differing opinions, Dr. Macaulay also expressed this opinion in a written report and when questioned by Denver Water's counsel. The ALJ could have reached a different conclusion based on other available evidence. But the mere fact that contrary evidence exists that could support

33

the opposite result is insufficient to justify setting aside an ALJ's order or the Panel's decision affirming it. And, we may not reweigh the evidence to reach a result contrary to the ALJ's factual findings if those findings are supported by evidence in the record. *See Pacesetter Corp.*, 33 P.3d at 1234; *Metro Moving & Storage Co.*, 914 P.2d at 415.

¶ 58    The ALJ credited Dr. Macaulay's testimony over other witnesses' testimony. And because Dr. Macaulay's opinions substantially support the ALJ's factual finding that claimant's low back pain is not related to his work injury, we must uphold this finding. *See* § 8-43-308; *Leewaye*, 178 P.3d at 1256; *Wal-Mart Stores, Inc.*, 989 P.2d at 252.

### C. Other Alleged Evidentiary Errors Provide No Basis for Setting Aside the Panel's Decision

¶ 59    Last, claimant lumps together a number of "other issues," including "multiple evidentiary issues," that he asserts "constitute reversible error." He implies that the Panel wrongly relied on mootness to dispose of issues; argues that the "case should be remanded for a determination regarding waiver"; asserts that the final admission should be stricken because it "does not have an

34

impairment rating attached"; and claims that "multiple evidentiary issues were raised." None of these contentions provide a basis for setting aside the Panel's order.

¶ 60    Claimant suggests the ALJ committed an evidentiary error that prevented him from impeaching Dr. Macaulay. As we understand his argument, claimant sought to discredit Dr. Macaulay with a contract purporting to show that Denver Water only renewed Dr. Macaulay's contract because he had reduced its workers' compensation costs. He contends that the ALJ "refused to consider such evidence and ruled the information was irrelevant."

¶ 61    The record reveals, however, that the contract in question *was* admitted into evidence in its entirety. The ALJ was not required to explicitly reference this contract to demonstrate that he had considered it. An "ALJ operates under no obligation to address either every issue raised or evidence which he or she considers to be unpersuasive." *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office*, 5 P.3d 385, 389 (Colo. App. 2000). Moreover, an ALJ "is not held to a crystalline standard in articulating his findings of fact"; findings are sufficient if "we are able to discern from the order the reasoning which underlies" it. *Id.* at 388.

¶ 62    Claimant offers nothing more than one or two conclusory sentences, with no citations to legal authority, addressing his remaining allegations of waiver, striking the final admission, and "multiple" other evidentiary issues.

> Our Court will not search through briefs to discover what errors are relied on, and then search through the record for supporting evidence. It is the task of counsel to inform us, as required by our rules, both as to the specific errors relied on and the grounds and supporting facts and authorities therefor.

*Mauldin v. Lowery*, 127 Colo. 234, 236, 255 P.2d 976, 977 (1953). "Given the dearth of legal grounds offered," we decline to address claimant's remaining arguments. *Meza*, ¶ 38; *see also Antolovich*, 183 P.3d at 604; *Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006) (a party who does not refer to evidence or authority in support of an argument does not present a cogent argument for review).

## V.  Conclusion

¶ 63    The Panel's order is affirmed.

JUDGE HAWTHORNE and JUDGE NIETO concur.