24CA0612 Starken v ICAO 01-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0612
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-210-685

John Starken,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, Thiess Mining, and
Rockwood Casualty Insurance Co.,

Respondents.

ORDER AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

John Starken, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office

Ritsema Law, Kristin A. Caruso, Ashley Cofsky, Denver, Colorado, for
Respondents Thiess Mining and Rockwood Casualty Insurance Co.

¶ 1    In this workers' compensation action, claimant John Starken seeks review of a final order of the Industrial Claim Appeals Office (the Panel) affirming the decision of an administrative law judge (ALJ) denying and dismissing his claim for compensation. We affirm the Panel's order.

## I.    Background

¶ 2    Starken began employment with Thiess Mining in April 2022 as a heavy equipment operator at a mine in Climax, Colorado. During a night shift on May 7, 2022, he was driving a large haul truck and stopped at a loading station. Starken alleges that he was injured when an excavator operator dropped dirt and rocks into the bed of the truck. He asserts that one of the rocks was so large that the force of it landing in the truck bed caused the truck to shake and the windshield to shatter. He also alleges that the force of the load hitting the bed "jostled him around" and caused his back to hurt.

¶ 3    After the incident, Starken informed his supervisor that the windshield was broken and that he had back pain. The supervisor drove him to St. Anthony Summit Hospital in Frisco. Starken told

the attending emergency physician that he had back pain from the incident when his truck was "jolted" by the drop load.

¶ 4    An x-ray of Starken's back showed degenerative disc disease but no evidence of fracture, and the physical exam showed "no evidence of torso trauma or extremity injury." The medical notes from that visit indicate that Starken walked in and reported no weakness in his legs. Starken was diagnosed with thoracic and low back pain, given one package of hydrocodone tablets, and discharged with instructions to take a few days off. Because the attending physician also noted that Starken was hypoxic with an eighty-two percent pulse oximetry reading, he recommended supplemental oxygen. Starken declined, asserting that he had never had issues with oxygen before.

¶ 5    For the next two days, Starken rested and did not work, but by May 10, he was not feeling well and had trouble breathing. He went back to St. Anthony's and was diagnosed with pneumonia, severe sepsis, and acute hypoxemic respiratory failure. He ultimately was intubated and placed in the intensive care unit. Chest x-rays revealed pulmonary embolisms, commonly referred to

as blood clots in the lung, and Starken was treated with antibiotics and anticoagulants.

¶ 6    Starken transferred to inpatient rehabilitation in June. While there, he complained of uncontrolled back pain, leg weakness, and neuropathic pain. Dr. Michele Mohr, the attending physician, noted in her records that these symptoms were likely related to a retroperitoneal hematoma that had developed while on the anticoagulation treatment.

¶ 7    After Starken was discharged from inpatient rehabilitation, he followed up with his primary care provider, Dr. Christina Jara. Dr. Jara recorded in her notes that Starken complained of right leg weakness, pain, and numbness that had caused him to fall on multiple occasions. Dr. Jara opined that Starken's pain complaints could have been related to the hematoma, because an MRI suggested that exiting nerve roots in the spine were abutting the hematoma. Dr. Jara also opined that Starken possibly had critical illness myopathy, a syndrome causing muscle weakness. Dr. Jara recorded in her notes that Starken reported "an incident with a truck at work," but that she was "not entirely sure about the pain origin."

¶ 8      Starken filed a Worker's Claim for Compensation on July 15, 2022, and Thiess Mining and its insurer, Rockwood Casualty Insurance Company (collectively, employer), filed a Notice of Contest.  Starken applied for a hearing before an ALJ.  After two hearings, the ALJ issued an order denying and dismissing his claim.  Starken appealed to the Panel, which affirmed.

## II.      Standard of Review and Legal Principles

¶ 9      As relevant here, we may set aside the Panel's order only if "the findings of fact are not supported by the evidence" or the "denial of benefits is not supported by applicable law."  § 8-43-308, C.R.S. 2024.

¶ 10     Under the Workers' Compensation Act of Colorado, §§ 8-40-101 to -47-209, C.R.S. 2024, an employee is entitled to compensation for an "injury or death . . . proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment."  § 8-41-301(1)(c), C.R.S. 2024.  The "in the course of" requirement refers to the time, place, and circumstances under which a work-related injury occurs.  *Town of Kiowa v. Indus. Claim Appeals Off.*, 2024 COA 36, ¶ 13.  Thus, an injury occurs in the course of employment when it takes place

4

within the time and place limits of the employment relationship and during an activity connected with the employee's job-related functions. *Id.* The term "arising out of" refers to the origin or cause of an injury. *Id.* A causal connection between the injury and the work conditions is required for the injury to arise out of employment. *Id.* An injury "arises out of" employment when it has its origin in an employee's work-related functions and is sufficiently related to those functions to be considered part of the employee's employment contract. *Id.* Proof of causation is a threshold requirement that an injured employee must establish by a preponderance of the evidence before any workers' compensation is awarded. *Faulkner v. Indus. Claim Appeals Off.*, 12 P.3d 844, 846 (Colo. App. 2000).

## III. Analysis

¶ 11 Starken, proceeding pro se in this appeal, filed a letter as his opening brief in which he repeats twenty-two of the ALJ's findings, and says that he is "asking another court to look at the evidence presented." He alleges that he was terminated and is unable to work due to his injury and its lasting effects.

¶ 12    Because Starken appears pro se, "we liberally construe his filings while applying the same law and procedural rules applicable to a party represented by counsel." *Gandy v. Williams*, 2019 COA 118, ¶ 8.  Accordingly, we seek to effectuate the substance, rather than the form, of his briefing.  *People v. Cali*, 2020 CO 20, ¶ 34.  We will not, however, rewrite his arguments or act as an advocate on his behalf.  *Johnson v. McGrath*, 2024 COA 5, ¶ 10.  As we understand it, Starken argues that the Panel erred by affirming the ALJ's decision denying his claim because he established that his injuries were work related, and thus compensable.

¶ 13    In a response brief, the employer generally acknowledges that Starken was working a night shift in the haul truck on May 7 and that an incident occurred that broke the windshield.  But the employer contends that the incident could not have scientifically caused the alleged mechanism of injury to Starken's back.  The employer also asserts that there was no causal connection between the incident and Starken's development of pneumonia and sepsis.

¶ 14    Starken filed a reply brief noting that he was seventy years old and proceeding without a lawyer.  He also moved to continue or stay this appeal because he was pursuing claims in another forum

against his employer and former counsel. This court denied that motion, noting that our review is limited to the record as presented to the ALJ and the Panel, and we will not consider new evidence on appeal. *Starken v. Indus. Claim Appeals Off.*, (Colo. App. No. 24CA0612, July 26, 2024) (unpublished order); *see also Sosa v. Indus. Claim Appeals Off.*, 259 P.3d 558, 561 (Colo. App. 2011).

### A. Proceedings Below

¶ 15 At the first hearing, the ALJ heard testimony from Starken and Dr. Barry Ogin, who performed an independent medical examination of Starken at employer's request. At the second hearing, the ALJ heard testimony from accident reconstruction engineer Robert Lynch, P.E., and Robert Nobilini, Ph.D., a human factors expert.

¶ 16 The ALJ also considered a report from Lynch, in which he concluded that the windshield of the haul truck was struck by an object, causing it to shatter. Lynch also opined, both in his report and in testimony, that the acceleration applied to Starken while seated in the cab at the time of the May 7 incident was less than

2.3g.[1]  Lynch testified that the acceleration would have been thereafter reduced by the seat cushion and suspension system. Lynch explained that 1.0g is the acceleration due to gravity.  Thus, he concluded that there was no significant "jarring" of the haul truck as Starken described.  The ALJ credited Lynch's opinion, finding it persuasive.

¶ 17    The ALJ also considered Dr. Nobilini's report, in which he opined that Starken's acceleration during the incident "would have only been a fraction of the 2.3g determined by Lynch."  Under these circumstances, then, Dr. Nobilini further opined that the acceleration Starken experienced during the incident was "well within the range of accelerations incurred during every day, non-injurious activities of daily living, and well within the range of decelerations considered safe."  Accordingly, Dr. Nobilini concluded, both in his report and testimony, that no work-related mechanism of injury accounted for Starken's back condition.  The ALJ found Dr. Nobilini's opinion credible and persuasive.  And in reliance on

---

[1] The unit "g" is a unit of acceleration equal to that which is experienced by an object at the earth's surface as a result of the earth's gravitational pull.

Lynch's and Dr. Nobilini's opinions, the ALJ concluded that Starken failed to establish that it was more likely than not that he sustained a low back injury due to the incident.

¶ 18    The ALJ also concluded that Starken had not met his burden to prove that his pneumonia, sepsis, and associated conditions arose out of and in the course of his employment. The ALJ noted that there was a "near consensus" among all of Starken's treating and examining physicians that Starken's condition arose from an infectious source.

¶ 19    The ALJ credited the testimony of Dr. Ogin as support for this finding. Dr. Ogin testified that Starken was diagnosed with thoracic and lumbar back pain and hypoxia, and he was prescribed hydrocodone. Dr. Ogin opined that hypoxia could cause various health issues, including cardiac problems, stroke, loss of consciousness, memory difficulties, and cognitive impairment.

¶ 20    Dr. Ogin further testified that Starken's health deteriorated roughly three days after the incident when he sought emergency care on May 10 for his septic pneumonia. Dr. Ogin opined that Starken experienced a severe complication from the blood thinners he was treated with, resulting in a retroperitoneal hematoma. Dr.

9

Ogin emphasized that he didn't see anything in the medical records suggesting that Starken's pneumonia and its associated complications were related to the workplace injury.

¶ 21 Dr. Ogin also testified regarding the possibility of lumbosacral plexopathy — a disorder of the nerves in the lumbosacral plexus — but disagreed with the assertion that the allegedly traumatic jostling in the truck was its primary cause. Instead, he emphasized that Starken's extended hospitalization, bed rest, minimal physical activity, and a series of falls were significant factors contributing to his back pain. The ALJ credited Dr. Ogin's opinion that Starken's leg symptoms resulted from the hematoma and were unrelated to a back injury.

¶ 22 Starken testified that during one of the scoop loads from the excavator to his truck, he felt the truck shake and saw the windshield shatter. He said that he immediately called the excavator operator on the radio to tell him the windshield had broken. When asked by his counsel if he felt back pain right away, Starken replied, "[N]ot immediately. I called [the supervisor], and, you know, it was about a half an hour before he showed up. But by the time he showed up, yes, I had pain in my back." His counsel

asked him, "In that scoop that was dropped, [the] expert report, which you have seen, states that the excavator was approximately [ten] to [fifteen] feet above the haul truck on that particular drop. Do you think that is accurate?" Starken responded,

> You know, I can't -- I'd be lying if I told you I knew that. You know, you got a haul truck, you are sitting in it, you got a canopy over the top, you got a rearview mirror. You can't see. You know, I can't tell how high he is. . . .
>
> . . . .
>
> But, you know, the way it bounced the truck, I would say he was up in the air a ways.

¶ 23    Starken also testified that he could not remember much from the two days he took off work after the incident or from his time in the hospital. However, he disputed that his injuries were unrelated to the accident. Starken testified that he "got the hematoma and, you know. It is all from the accident and the trauma that goes with an accident."

### B.    The Panel Didn't Err by Affirming the ALJ's Decision

¶ 24    After thoroughly reviewing the record, we agree with the Panel that substantial evidence supports the ALJ's determination. The ALJ found that Dr. Ogin was credible in his opinion that Starken's

leg symptoms resulted from the hematoma and were unrelated to the back injury. Specifically, Dr. Ogin testified:

> [T]here is a gap where [Starken] was not thinking well, which was due to the hypoxia and the pneumonia and he was hospitalized. And then when he started thinking better, his right leg wasn't working. And for him, that was a simple continuum that began with his occupational injury, but a lot happened in between that -- mainly having to do with the leg going weak, and the weakness was caused by the lumbosacral plexopathy.

¶ 25    Dr. Ogin testified that Starken told him that he was jarred while sitting in the truck and felt back pain shortly thereafter. Dr. Ogin explained that a simple jarring mechanism while sitting in a truck would, at worst, have caused a muscle strain or soft tissue injury. Dr. Ogin explained that Starken's back pain did not become significant until much later, when Starken was doing rehabilitation after he had "been hospitalized on bedrest for weeks, if not months, doing minimal activity, which I think would have led to significant lumbar deconditioning."

¶ 26    The ALJ found that Starken complained of back pain after the incident and sought treatment. But based on the expert testimony, the ALJ found that the forces involved in the incident were

12

insufficient to cause a low back injury requiring medical treatment. As a reviewing court, we are bound by the ALJ's resolution of conflicting evidence, regardless of the existence of evidence that may have supported a contrary result. *See Sullivan v. Indus. Claim Appeals Off.*, 796 P.2d 31, 32-33 (Colo. App. 1990). Starken sets forth facts in the ALJ's order that he alleges support a work-related back injury, and it's true that at least one physician attributed Starken's back injury, at least in part, to the incident at work. But the ALJ found that other evidence, including substantial expert testimony, outweighed Starken's evidence. An ALJ's resolution on questions of fact must be upheld if supported by substantial evidence and plausible inferences drawn from the record. *See Eller v. Indus. Claim Appeals Off.*, 224 P.3d 397, 400 (Colo. App. 2009). We cannot substitute our judgment by reweighing the evidence. *See Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 56. Therefore, because substantial evidence supports the ALJ's conclusion, we cannot reweigh the evidence on the mechanism of injury to Starken's back or the extent of his back injury.

¶ 27     We also perceive no error in the ALJ's determination that Starken's pneumonia, sepsis, and associated conditions did not

arise out of and in the course of his employment. The ALJ observed that there was a near consensus among all the treating and examining physicians that Starken's pneumonia and sepsis arose from an infectious source. The ALJ noted that, while it was possible that Starken contracted an infection at work, there was no credible evidence to that effect. He also relied on Dr. Ogin's testimony that any inhalation of dust would not have caused an infection. Because Starken did not provide any credible evidence of how such an infection would have developed in the workplace, the ALJ found that Starken had not proved that it was more likely than not that his pneumonia, sepsis, and associated symptoms arose out of and in the course of his employment. The Panel affirmed that determination.

¶ 28    Under our standard of review, we may not set aside a Panel's order unless the findings of fact are not supported by the evidence or the denial of benefits is not supported by applicable law. § 8-43-308. It is a claimant's burden to show that a disability was proximately caused by an injury arising out of and in the course of employment. We discern no error in the Panel's affirmation of the ALJ's determination that Starken did not meet that burden.

14

## IV.    Disposition

¶ 29    The Panel's order is affirmed.

JUDGE HARRIS and JUDGE YUN concur.